## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

—————————————————————

|  |  |  |
|---|---|---|
| BLESSING EKEMEZIE | ) | |
| 7814 Attleboro Drive | ) | |
| Springfield, Virginia 22153 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CVS PHARMACY INC. | ) | |
| c/o CT CORPORATION SYSTEM | ) | Case No. _____ |
| 450 Veterans Memorial Parkway, Suit 7A | ) | |
| East Providence, Rhode Island, 02914 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| UNITED FOOD & COMMERCIAL | ) | |
| WORKERS INTERNATIONAL | ) | |
| UNION UFCW and LOCAL 400 | ) | |
| 1775 K Street, NW | ) | |
| Washington, D.C. 20006 | ) | |
| | ) | |
| Defendants. | ) | |

—————————————————————

## **COMPLAINT**

Blessing Ekemezie, ("Plaintiff"), by and through her undersigned attorney Stephen C. Swift,

hereby submit this Action Complaint for declaratory and injunctive and other appropriate

equitable relief, compensatory and punitive damages, attorneys' fees and costs against the

Defendants, CVS Pharmacy Inc., and United Food & Commercial Workers International Union

(UFCW) and its branch Local 400, for violations of Section 301 of the Labor Management

Relations Act ("LMRA"), 29 U.S.C. § 185, 42 U.S.C. § 1981, Age discrimination in

employment Act of 1967, 29 U.S. Code § 623, and Intentional Infliction of Emotional Distress in violation of District of Columbia law.

Plaintiff has exhausted her administrative remedies. Plaintiff timely filed an EEOC discrimination charge. She received a right to sue letter postdated January 11, 2017, which Plaintiff received on Monday 23rd, 2017. **See Attached Exhibit A.**

## NATURE OF THE CASE

**1.**     Plaintiff, a United States citizen and a citizen of the Commonwealth of Virginia, brings this action seeking declaratory, injunctive, and monetary relief (1) against Defendant: CVS for its unlawful and intentional discrimination, harassment, hostile work environment, perpetrated against her, by its agents and on its behalf, in violation of the ADEA, and S. 1981; breach of contract of the CBA, (2) against Defendant: CVS for Intentional Infliction of Emotional Distress in violation of District of Columbia law, and (3) against Defendant: the UFCW and its local unit, LOCAL 400 ("Union") for breach of their duties of fair representation in violation of LMRA.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 for civil actions arising under the laws of the United States, – breach of CBA contract and breach of the duty of fair representation pursuant to (1) Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, (2) Age discrimination in employment Act of 1967, (3) racial discrimination in violation of 42 U.S.C. § 1981. This Court also has supplemental jurisdiction over Plaintiff's state claims, pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in this pursuant to 28 U.S.C. § 1391(b) because both Defendants reside in the District of Columbia.


# PARTIES

**Plaintiff**

4.      Blessing Ekemezie ("Plaintiff" or "Mrs. Ekemezie"), is a 52 year old Black woman from Africa (Nigerian American). She is an individual and resident of Springfield Virginia, and a former employee of Defendant CVS store No. 2004 located in Alexandria, Virginia, and a member of Defendant the UFCW Union.


**Defendants**

5.      Defendant CVS Pharmacy Inc. is a resident of the District of Columbia with many stores in the district and all over the D.C. Metro, including Virginia and Maryland.


6.      CVS, at all relevant times was Plaintiff's employer for 25 years, until it terminated her on September 12, 2015.


7.      CVS Pharmacy Inc., the "Employer Defendant, engages in an industry affecting commerce, as defined by § 501 et seq., of the Labor Management Relations Act, 29 U.S.C. § 142 et seq., and § 152 et seq., and within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185.

8.      The Defendant United Food Commercial Workers ("UFCW" or "Union"), is a resident of the District of Columbia.

9.      At all relevant times, UFCW and its branch, Local 400, which has an office in Maryland, were Plaintiff's Union.

10.     At all relevant times UFCW and its branch, Local 400, were the sole representative of its members including Mrs. Ekemezie, under the Collective Bargaining Agreement ("CBA") contract with CVS Pharmacy Inc.

11.     Defendant Union is, a labor organization representing employees in an industry affecting commerce as defined in Section 501(1) and 2(5) of LMRA, 29 U.S.C. § 142 et seq., and §152 et seq., and within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185.

## FACTS

**May 22, 2015:**

12.     On May 22, 2015, Mr. Patrick Girard, District Manager, came to Plaintiff's CVS store # 2004, with another Pharmacist Mr. Rani, from another CVS store. Mr. Girard told Mrs. Ekemezie that they were there to introduce CVS new hire, Mr. Graham Gravely (a white Caucasian male, younger than Mrs. Ekemezie, and under the age of 40, and also a pharmacist), as her new supervisor. Mr. Girard also told Mrs. Ekemezie that Mr. Rani will be working with Mr. Graveley as he is new to the company until he settles in.

13.     Immediately during that first visit, Mr. Graveley asked Mrs. Ekemezie to give him her

views on the effectiveness of CVS' "We Care" program, whether it was helping Plaintiff's work

schedule – "what do you think about "We Care" program, is it helping your schedule?" Mrs.

Ekemezie answered, and told Mr. Graveley that the program was not bad if you have a

technician working with you: The issue is when you are working alone with no help, "We Care"

does not work well.


14.     Next, Mr. Graham, Plaintiff's new supervisor, who has just been introduced to Mrs.

Ekemezie, and was there for the first time, told her that he got a call from a customer who

complained that when she called the pharmacy on May 19, 2015 (two days before Mr.

Graveley's first visit to Plaintiff's store), Mrs. Ekemezie put her on hold for 10 minutes before

attending to her. Mrs. Ekemezie detailed Mr. Patrick Girard, Rani, and Graham Graveley on

what happened. She explained to them that on that day, she was working alone by herself with

no support for the entire day shift – no technician or any help for 13 hours - 8:00 am to 9:00 pm,

and that she alone was dealing with instore customers, customers on the telephone, Doctors Rx

call-ins, filling prescriptions and running it through the register for payment, etc., all by herself

for 13 hours day shift, and that she was taking a Doctor's Rx. call-in order when she put the

woman on hold. Plaintiff served, the woman after taking the Doctor's phone orders.


15.     After her explanation, Mr. Girard the store District Manager, commented: "Is this the

way you will go to the new store if you are complaining?" (CVS was building new and a bigger,

24 hours store #2004 round the corner, to replace the old smaller store). At the time of the May

22, 2015 visit to store #2004 by the trio - Patrick the District Manager, Graham, and Rani, CVS

was preparing for the move to the bigger, new store, as the new facility was being completed.

Existing employees, including Mrs. Ekemezie knew that the move was imminent and expected to

be part of the move as well). Mrs. Ekemezie explained to Mr. Girard, that she was just

explaining to him that the reason the customer was kept on hold, was because she was dealing

with others ahead of her phone call, and that she had no help – was doing everything alone, by

herself. Mr. Patrick then asked Plaintiff, "are you sure you worked all day by yourself without

any help?" to which Plaintiff replied: for 13 hours, not even a single soul entered the pharmacy

that day, to assist me. Mr. Patrick Girard then said: "I will check in the video to see if it is true."

However, to-date, neither Mr. Patrick Girard, nor her supervisor Mr. Graham Graveley, came

back to tell Mrs. Ekemezie that they have checked the store video, and have proved that her

account that she worked for 13 hours without assistance on that day, was accurate or inaccurate,

even though that fact is easy to ascertain from the pharmacy shift schedule.


**June 23, 2015:**

16.     On June 23, 2015, Mr. Graham Graveley came to Plaintiff's store, this time, with

pharmacist Rani and Daniel Tortoriello, CVS' Loss and Prevention Manager ("LPM") Mr.

Tortoriello then told Plaintiff that he was there to do a "baseline audit" and that since Mr.

Graveley her supervisor was new, he, Tortoriello, will explain "baseline audit" to Graham

Graveley.


17.     Plaintiff was working alone that day, without any help. No pharmacy technician, was

provided by CVS to assist Plaintiff, and Mr. Graveley, Mr. Tortoriello, and Mr. Rani all saw, and

knew that Mrs. Ekemezie was working without help. Mrs. Ekemezie alone attended to all CVS

Rx customers, including doctors, in store customers, phone customers etc., and completed the prescription filling procedures from beginning to finish – filled, pulled, counted, and checked out all prescriptions for her shift alone.

18.     On completing a prescription production and after verifying the medication, Mr. Graveley approached Plaintiff and said that he thought Plaintiff was supposed to open the bottle again, and visually look at it (i.e. she should reopen the cap of the bottle of the same prescription that she had accurately filled, having gone through the prescription filling protocols by herself, look in and close the bottle). Mrs. Ekemezie replied that as the pharmacist in charge PIC, she did not reopen the bottle again, just to look into the bottle and close, after she had accurately filled the prescription herself from the beginning of the process to the end - production to verification, and it was not like another pharmacist or technician filled the medication and handed it over to her to quality check.

19.     Later that day, Mr. Graham Graveley and another pharmacist Rani, called Mrs. Ekemezie to the office and presented her with a written counseling (counseling on a customer feedback as opposed to counseling on any policy violation). The counseling she was told, was in regards to the complaint by a customer that Mr. Graham Graveley brought to Plaintiff's attention earlier during his first meeting with her that was supposed to be an introductory visit with Plaintiff on May 22, 2015, as her new supervisor. The complaint as noted earlier above, was that Mrs. Ekemezie kept the complaining customer on hold for 10 minutes on May, 19, 2015, before attending to her. Based on that complaint, Mr. Graveley decided to give Mrs. Ekemezie a written counselling to sign, in spite of Plaintiff's reasonable, justified, and excusable explanation and

reason she gave Mr. Graveley for keeping the complaining customer on hold before eventually attending to her - that on that date, she worked alone by herself throughout the 13 hours shift - 8:00 am to 9:00 pm, without any assistance.

20.     The written counseling Mr. Graveley wanted Plaintiff to sign, concerned also, another complaint that Mr. Graham Graveley told Plaintiff during the visit for the first time, that a customer made to him on June 9, 2015, against Plaintiff, that Plaintiff refused to update the customer's insurance. Plaintiff explained to Graham Graveley and Mr. Rani, what happened. Mrs. Ekemezie explained that, about three (3) weeks prior to June 9, 2015, that complaining woman came to her store, handed her a new insurance card that she has just received. The woman told Mrs. Ekemezie that she was planning to take her son to the hospital and asked Plaintiff to run her insurance through her computer and check for her whether insurance will cover medicine for her son, when she takes him to the hospital. Mrs. Ekemezie explained to the woman, that she would not be able to tell her whether or not the insurance will pay for his son's medication until after she had taken her son to the hospital, and the doctor has prescribed medicine for him. Plaintiff asked the woman to come back after she gets her son's prescription, and that she would run the card into her computer and at that time, will be able to tell her whether or not her insurance will cover her son's medicines. So the woman left.

21.     Mrs. Ekemezie further explained to Mr.Graveley and Mr. Rani, that on June 9, 2015, when the woman came back after she had taken her son to hospital, put in her prescription, came back to pick it up, she (Plaintiff) was not on the morning shift, when she brought in her

prescription, and so could not tell whether or not the doctor called in the prescription for the woman's son or the woman brought it in herself to be filled.

22.     Mrs. Ekemezie explained that on June 9, 2015 the woman did not arrive at the pharmacy, until 9:05 pm, after Plaintiff had already closed, and have shut down her computer at 9:0 pm as she was obligated to do. Also, that her shift supervisor, Ms. Drucilla McCullough had also closed and taken away her register. But as Ms. McCullough was walking away with the register, Plaintiff saw two customers running to the pharmacy at 9:05, after the pharmacy had already closed for the day and she had shut down her computer.

23.     One of the customers running late to the pharmacy, and the last of them, was the woman who complained to Graham Graveley. Seeing them, Mrs. Ekemezie, pleaded with her shift supervisor, Ms. McCullough to bring back her register so that she can ring up the two late customer's prescription. Ms. McCullough obliged. So Plaintiff rang the first customer in line's prescription and gave it to her, and that customer paid, thanked Plaintiff and left.

24.     Then Plaintiff did same for the complaining woman - rang her prescription, gave it to her and expected her to pay for it and leave the store. Instead, when Mrs. Ekemezie told the woman the price she had to pay for her prescription, the woman said that the price was too much and asked Plaintiff to run her insurance through her computer and check whether her insurance will pay for the medicine. Plaintiff told the woman that she has already closed her computer for the day, and cannot open it again until the next morning. The woman kept insisting that the price for the medication was too high and that she cannot pay, it. The woman persisted and would not

understand that Plaintiff cannot do anything further, as Plaintiff had already explained to her.

Plaintiff told the woman that she will be in the store early in the morning and if she came back

then, she will check the insurance for her. The woman did not pay, and Plaintiff did not give her

the medication.

25.     Based on these facts, and the circumstances surrounding it, that was a situation where

Plaintiff clearly went above and beyond the call of duty to help her customers. Despite Mrs.

Ekemezie's reasonable and verifiable reasons, that objectively excuses her actions, instead of

lauding Mrs. Ekemezie, she was unethically rewarded, with a phony, unconscionable and

dishonest written counseling as punishment for doing in deed, more than she was required to do

in the circumstances, as store #2004's PIC, in serving Defendant's customers.

26.     Mr. Graveley then asked Mrs. Ekemezie to sign the counseling. Mrs. Ekemezie in turn,

asked pharmacist Rani, what is going on here? Mr. Rani said nothing and Mrs. Ekemezie refused

to sign the counseling and took the copy. See attached Exhibit… Mr. Graveley then told Mrs.

Ekemezie that he will follow up on her customer service improvement in 30 days which will be

July 24, 2015.

**July 12, - 26, 2015:**

27.     On July 12, 205, Mrs. Ekemezie was on a two weeks' vacation with her family. While on

vacation, her partner staff pharmacist, Angela Satorre ("Mrs. Satorre") (a Phillipino woman, who

worked for CVS for about seventeen (17) years and was also terminated later), texted Plaintiff

telling her that Mr. Graveley came to Plaintiff's store and told her and Mr. Marco Villarca the

general store manager (not a pharmacist), that "Blessing has just gone on vacation for one (1) week and the script count has increased".

28.     Mrs. Satorre also told Mrs. Ekemezie that Graham Graveley approached her, and asked her if she would like to become the Pharmacist in charge (PIC), which has been Plaintiff's position for the best part of her 25 years, working for CVS. Mrs. Satorre told Plaintiff that she asked Mr. Graveley why he was offering her Blessings' position, what about Blessing, she has been here for a longer time she knows all the customers. (Mrs. Satorre has worked with Mrs. Ekemezie at store #2004, as her staff pharmacist, for less than three years).

29.     Mr. Graveley then threatened, that if Mrs. Satorre refuses to accept the PIC position, he will make her float (a float pharmacist is assigned to work at different CVS pharmacy stores, without a permanent store or work station to claim as their store).

30.     Despite Mr. Graveley's threats, Mrs. Satorre declined Mr. Graveley's offer to take over Plaintiff's PIC position She also told Mr. Graveley that she will not float, but that she was going with Mrs. Ekemezie as her PIC, to the new store, because, Blessing has been in store # 2004 for a long time and that she knows most if not all of the store's existing customers, and that it was going to be the same customers that will be served at the new store.

31.     Meanwhile, Plaintiff was still the PIC of store # 2004, and Mr. Graveley never mentioned anything about the move to, and opening of the new store # 2004 in November 2015, to her.

32.     Hearing all that Mrs. Satorre her staff pharmacist told her, while still on vacation, it became clear to Plaintiff that Defendant CVS, and her management officials, have already decided that she was not moving to the new store with the rest of the employees. That concerned her and she became riddled with anxiety over her job future. It also started dawning on her that the sole reason Mr. Graveley was brought in, was perhaps to set her up to fail, so they can find some reason to terminate her. Mrs. Ekemezie, believed that Mr. Graveley had CVS' charge, to do everything and anything possible to insure he gets rid of her, before the new store opens.

**July 27, 2015:**

33.     When Mrs. Ekemezie returned from her family vacation, and back on her job on July 27, 2015, the first thing her general store manager Marco Villarca told her, was that Graham was at the store while she was on vacation, and asked him why the store's script count (the number of prescription dispensed), increased during that week that Blessing was on vacation? Mr. Villarca told Mrs. Ekemezie that he did not respond to Mr. Graveley, because his question about the increase of the store's script count, did not make any sense to him.

34.     As Mrs. Ekemezie's was working trying to get back to the rhythm of her job after two weeks' vacation, Mr. Graveley and Mr. Rani visited Plaintiff's store, and called her into the office. Plaintiff was told to sit down and Mr. Graveley told Plaintiff that he has decided to give her a "non-compliant counseling in writing", based on his visit on June 23, 2015 with Daniel Tortoriello, when he saw Plaintiff verify the prescription she filled and checked it out, without reopening the cap again to visually look at it again. Mr. Graveley then asked Mrs. Ekemezie to sign the paper.

35.     Before asking Plaintiff to sign the written counselling, Mr. Graveley asked Mrs. Ekemezie if there was anything he can do to help her, and suggested her reviewing the quality assurance module under "We Care. Plaintiff said Ok, but reminded Mr. Graveley that she has just returned from two weeks' vacation.

36.     Confused, because that was something she and Mr. Graveley had already dealt with, and as she fully explained to Mr. Graveley on June 23, 2015, before she went on vacation on July 12, 2015, Mrs. Ekemezie reminded Mr. Graveley that it was over two weeks before she went on vacation. That during that period, he did not give her any written counseling, so why now, on the day she returned to work after two weeks' vacation and over one month later, you decided that you need to put it in writing - something is wrong here.

37.     Mrs. Ekemezie then asked Mr. Rani, because Graham Graveley was new to the store, what is going on here? To which Mr. Rani replied: "nothing, we just want to put it in writing just in case."

38.     Plaintiff refused to sign the written counseling, and Mr. Graveley went ballistic on her. He became very upset. Boiling with anger and rage, Mr. Graveley yelled at Mrs. Ekemezie: "you went on vacation for a week and the scripts count increased." Thus, he confirmed to Plaintiff, what her staff pharmacist Angela Satorre, and her general store manager Marco Villarca, told her during her vacation and on her return that Mr. Graveley had told them.

39.     After Mrs. Ekemezie refused to sign the paper she came out of the office, went into the

pharmacy and continued her work. But Mr. Graham remained in the office and started

monitoring Mrs. Ekemezie on the store's video camera, as she carried out her duties as the

store's PIC, serving Defendant's customers, without knowing that Mr. Graveley was monitoring

her every move on the video camera in the office while she filled prescriptions for her customers.


40.     While Mr. Graveley was monitoring Mrs. Ekemezie in the office via video camera, her

shift supervisor, Ms. Drusilla McCullough entered the office and saw Graham monitoring her

through the video camera. Because Graham Graveley was new, her shift supervisor Ms.

McCullough, did not know who he was. When Ms. McCullough came out of the office, she came

to Plaintiff and asked if she knew who the man in the office was. Plaintiff told Ms. McCullough

that the man he saw in the office, was her new supervisor.


41.     Ms. McCullough then told Plaintiff that Mr. Graveley was monitoring her through the

video camera when she entered into the office. Plaintiff thanked Ms. McCullough for letting her

know and said to her that she was not a thief and that she not doing anything wrong. However,

that conveyed to her also, that Graham Graveley was after her, and that made her very

uncomfortable and she felt violated and humiliated.


42.     After Mr. Graveley stopped monitoring Mrs. Ekemezie, via the video in the office, he

came into the pharmacy where Plaintiff was working. Because Plaintiff was very busy, Mr.

Graveley did not know that Mrs. Ekemezie saw him, as he used his cell phone and took pictures

of Mrs. Ekemezie's work station, and where she posted the work schedule for her technicians and pharmacists.

43.     Then, Mr. Graveley turned, took a picture of Plaintiff's work station board, where she assigns work tasks for all her pharmacy team members. He also took pictures of the baskets on the floor. Although Mr. Graveley did not know that Mrs. Ekemezie saw him taking those pictures, she knew he was taking the pictures, to use them as a trap. Plaintiff believed she was being set up to fail.

44.     Mr. Graveley had warned Mrs. Ekemezie not to adjust the computer generated work schedule called "myschedule", which Plaintiff believes, in reality, does not make sense without some adjusting done to it, and especially because Graham Graveley himself, was aware that the schedule will be adjusted in any case, based on availability of a technician, and the time that technician was able to come in, and not based on the computer generated schedule.

45     As the PIC for store #2004, Mrs. Ekemezie has no permanent full-time technician to assist her. In order for her to engage a technician to assist in her pharmacy on any given day, she will have to call every CVS store she knows, and ask for an available technician to come over to her pharmacy to help her, and even if she was to get one, that technician can only work according to the time they have from their base store.

46.     Most of the time, the computer generated "myschedule" will schedule a technician for

only 2 hours a day for a thirteen (13) hours shift day, which to Plaintiff, makes no sense.

Furthermore, and according to CVS' policy, no employee is allowed to work two (2) hours shift.

So a technician must work a minimum of four (4) hours. The technician has a choice of either to

work two (2) hours in the pharmacy and two (2) hours in the front store to make up the minimum

four hours. Some of the technicians do not want to work in the front, so they choose not to work

at all, if all the scheduled time for them in the pharmacy will be only two hours (which is

normally the number of hours the computer generated schedule provides). Often, the result is that

the pharmacist ends up working the whole shift for thirteen hours, without any help.

Some pharmacist who came to cover Mrs. Ekemezie's store when her partner, staff pharmacist

Angela Satorre was sick or on vacation, have sworn not to work at store # 2004 again because of

insufficient technician hours. They have asked Plaintiff the reason for the no technician hours at

her store, as they have different experience with other stores they served, where they were

provided sufficient technician work hours, while in her store #2004, the most technician hours

that her store can provide, is five (5) hours or less for a thirteen (13) hours full day shift.


47.     Thus, with Graham Graveley's command to Mrs. Ekemezie not to ever adjust the

computer generated schedule, Plaintiff cannot adjust the schedule no matter how necessary she

deemed it, and even considering the above reasons. Mrs. Ekemezie must obey Graham

Graveley's orders. She must rigidly follow that computer generated schedule like a robot, no

matter how irrational, impractical, and useless it is, and no change must be made, even though

she does not have a permanent instore technician of her own, to assist her. The result, she does

not adjust the schedule, it is impossible to get a technician who will agree to work for only two

hours and since it is impossible, Plaintiff ends up working alone for long hours without any assistance in a fast paced job dealing with all sorts of people with myriad and different problems.

48.     From that first day May 22, 2015 when Mr. Graham Graveley was introduced to Mrs. Ekemezie as the targeted employee, he went to work immediately. Mr. Graveley on behalf of, and at the direction of CVS management and senior managers, used everything in the play book of unscrupulous, deceitful, ethically challenged, unconscionable, unfair, ungrateful, dishonest, and cruel employers like CVS: The kind of employer that claims that it values experience, excellence, loyalty and dedication, yet in reality pays lip service to that creed. The kind of employer that claims to value its employees, and regard them as their biggest asset, but in reality pay lip service to that creed. The kind of employer who uses their finest employees from their youth, and throw them out of service like trash at their whim, with reckless abandon, while hiding behind mercurially concocted, flimsy, and objectively unpersuasive pretextual reasons, when those employees get old (over 40), (and perhaps develop some disabilities, like Mrs. Ekemezie who has type 2 diabetes), and needed their job and the financial stability it brings, more than ever. Also, the kind of employer that selfishly overworks its employees, by knowingly and intentionally understaffing their store, underpays them, turns back and terminate them because it thinks it is paying them too much. And then, replace them with new, inexperienced and younger recruits, who it pays a fraction of what it paid its older experienced and dedicated employees, that it has "thrown under the bus" so to speak, without scruples, solely to serve its financial bottom-line, but at a high detrimental cost for those loyal employees who have paid their dues to the company. This is exactly what CVS and its management and Mr. Gravely and others did to Mrs. Ekemezie, and it is unconscionable.

49.     Mrs. Ekemezie's fate had already been ordained by CVS management, long before Mr. Graveley first stepped foot into Mrs. Ekemezie's pharmacy. That she was to be terminated, had nothing to do with her inability to do her job or any violation of policy as CVS would claim. That it took 25 years for CVS to find any cause that warranted Mrs. Ekemezie's termination, raises the question why so late in her career?

50.     Like the story of the now fabled "weapons of mass destruction", that the American people were told of, the decision to terminate Mrs. Ekemezie was an intentional predetermined, done deal that all that remained was to fill in the blanks aka lies, a scheme or whatever, to make it stick as it were. In Mrs. Ekemezie's case, all that was left, was for CVS and its management, to look for the flimsiest reason they can find, by all means, including setting a trap for her, and setting her up to fall in that trap or to fail, by hounding, harassing, intimidating, coercing, humiliating, and even putting her health in danger by Mr. Graveley singling Plaintiff out and imposing such unconscionable, unwarranted unreasonable and draconian rule, that in no way promotes CVS' business interests, against a woman with type 2 diabetes. By asking Plaintiff not to eat or snack at her workstation, thus making it onerous, and creating a health risk for her should she suffer a sudden drop of blood sugar, while working for Defendant CVS for thirteen (13) hours straight, with no assistance, and with no break.

51.     As soon as Mr. Graveley laid eyes on Mrs. Ekemezie, and knew who he was to target for termination, he harassed, intimidated, threatened, and verbally abused Mrs. Ekemezie. Mr. Graveley humiliated Mrs. Ekemezie in front of other employees, back-talked against her and

impugned on her professional ability, by dishonestly and unconscionably, using the increase or

decrease of the stores script count as a rouse to terminate Mrs. Ekemezie even though he knows

that to be unfair, and has no basis whatsoever.


52.     By his actions and treatment of Mrs. Ekemezie, Mr. Graveley, on behalf of CVS,

intentionally and recklessly created an impermissible hostile work environment for Mrs.

Ekemezie, by creating traps for her to fall in, so that they can use them as reasons for terminating

her. By monitoring her via video camera while she was working, without her knowledge,

something that was never done to any other employee. By constant targeting of her, whether she

was at work, on vacation or not, and by denying her minimum courtesy and fairness. By

insulting, threatening, intimidating and putting her in a constant tailspin anxious mode, by Mr.

Graveley's unrelenting harassment of Plaintiff, and by attempting, by coercing to force her to

sign phony counseling papers, that was created to solely to enable Defendant CVS, build

something to use as reason for terminating Plaintiff – in other words, by attempting to coopt Mrs.

Ekemezie against her own interest, to sign her own death sentence so to speak, even though it

was unwarranted.


53.     Defendant CVS and its agents especially Mr. Graveley, and Mr. Rani, put Mrs. Ekemezie

in great fear, and anxiety, by their continuous targeting, unbridled harassment, and unveiled

hostility towards her. CVS and its agents, for almost four months, targeted discriminatorily

pursued Mrs. Ekemezie without justification. Mrs. Ekemezie went through the worst three plus

months of her 25 years, working for CVS. In the end, CVS terminated her because of her age and

race. She is a black woman, and was 51 years old at her termination. CVS also terminated

Plaintiff, because CVS, thinks it was paying her too much and so, calculated that it would save money by eliminating most of its older workers (40 years upwards), who have long tenures (10 year or more), as the salary of an older employee with 25 years tenure like Mrs. Ekemezie, could pay for three new pharmacists, out of school.

54.     CVS is terminating older employees with long tenures all over its stores in the D.C. Metro area and perhaps the country. To-date, since Mrs. Ekemezie was terminated, three of her former colleagues have also have been terminated, with certain factors common to them – age, tenure, sex and pay, and the cooked up reasons for terminating them, are not dissimilar. And a CVS employee who had access to the document, claims to have seen a list of names CVS has selected for termination and all the women CVS has terminated so far, from its store #2004, including Mrs. Ekemezie, was on that list.

55.     Going to work became a nightmare for Mrs. Ekemezie, as the thought of whether Mr. Graham Graveley will show up, and if he does, what he would do or say to her, terrified, and sucked out the oxygen in Mrs. Ekemezie, so to speak. Going to work that she had enjoyed for 25 years became a source of angst and emotional stress, caused by the sudden instability surrounding her job, and uncertainty created by the unwarranted hostile, threatening, humiliating actions of CVS and its agents against her.

56.     Mr. Graveley's interactions with Mrs. Ekemezie on the first day he met her, put her on notice that her new, white and younger supervisor, was not there just to be introduced to her, in

the normal sense of the word and employment custom, but rather to point Mr. Graveley to the correct employee that CVS has targeted at that time, for termination.

57.     Defendant CVS, through its agents including but not limited to Mr. Graveley and Rani's orchestrated adverse, intimidating, and humiliating actions against Mrs. Ekemezie. The degree of hostility and dishonesty with which they were carried out, from the first day of her return to work, from a two weeks' family vacation, and the fear and anxiety that they recklessly created in her, led Mrs. Ekemezie to contact her union.

58.     Mrs. Ekemezie contacted her union representative, Ms. Heather Thomas, and told her about all that was going on, including but not limited to the fact that Mr. Graveley was threatening, intimidating and harassing her, and forcing her to sign unwarranted and trumped up written counseling, and that she was afraid that she may lose her job. Mrs. Ekemezie asked Ms. Thomas her union representative, to help her and to advise her on what to do.

59.     Ms. Thomas told Mrs. Ekemezie that the union could not do anything at that time. Ms. Thomas however, advised Mrs. Ekemezie to start keeping record and notes of events until Mr. Graveley calls Plaintiff again to meet him in the office.

60.     Ms. Thomas then told Mrs. Ekemezie that CVS PIC Kehinde Adesina, a member of same union as Plaintiff, whose store #1830, was about to be closed, called her and was concerned about her job position, because she (Kehinde) did not know whether she was going to be moved to the new store # 2004 (Mrs. Ekemezie's store and where she is the PIC), as a staff pharmacist,

or to another store since her store # 1830 will be closing and she was not hearing anything from Graham Graveley.

61.     Ms. Thomas informed Plaintiff that she told Kehinde that CVS can move her to any store they like including store # 2004 (Ms. Ekemezie's store), but not as a PIC, because Ms. Ekemezie is already the PIC in store #2004, and she has seniority over Ms. Adesina, who was from another store and new to store #2004. Ms. Thomas also told Plaintiff that she told Ms. Adesina that as for Blessing Ekemezie, store # 2004 is her store and she will move there for sure.

62.     Even though Plaintiff did not need any follow-up of any sort, and there was no reasonable reason for such, other than it was done for ulterior motive, before Mr. Graveley left after his July 27, 2015 visit, he told Mrs. Ekemezie that he will follow up on her progress in 30 days and left.

63.     Suddenly after 25 years of dedicated service, Plaintiff's ability to perform a job she has built experience on over the years, and have done so well, is being called into question by Defendant CVS, for one purpose only – a pretext, and orchestrated scheme to hang on, as reason for her eventual termination.

**August 8, 2015:**

64.     On August 8, 2015, Mr. Graveley came back to Plaintiff's store, alone. He told Mrs. Ekemezie that he was there to do a July follow-up on the verbal correction on quality assurance issue, which he later put in writing after over one month. When Mr. Graveley left after his July 27, 2015 visit, to Mrs. Ekemezie's store, he told her that he will follow up in 30 days. However,

twelve days later, Graham Graveley returned and told Plaintiff that he was there to do the follow-up check with her.

65.     First the so-called quality assurance was nothing but a trumped up, non-issue that CVS and Mr. Graveley deemed to be something they could use against Plaintiff as reason for terminating her.

Second, the fact that Mr. Graveley had to rush back to Plaintiff's store, in twelve days instead of the 30 days he scheduled a phony progress follow-up of a veteran pharmacists, who have been correctly and safely dispensing prescriptions to thousands of patients/customers for thirteen hours daily, for most of her work shifts, for over 25 years, in itself, raises the question as to whether in deed, Mr. Graveley himself, believed that there was any such quality assurance issue, and or that any so-called verbal correction, counseling, and his coercion of Plaintiff to sign it, was warranted.

66.     If Mr. Graveley truly believed that Plaintiff needed counseling or correction, as he claims, why the rush for a follow-up after just twelve days, why not give Plaintiff the benefit of a meager 30 days (compared to the norm – 60 days or more, when employers who truly wanted to give their employees time and the chance to improve), at least on account of fairness?

67.     Mr. Graveley could not wait till 30 days, because in deed, there was nothing to be corrected in reality, but a cooked up and dishonest idea, put into plan for the sole purpose of having something in writing and on record, to hold against Mrs. Ekemezie as reason for terminating her. Also, he was charged by Defendant CVS, to terminate Plaintiff before the new

store opens, and he was working on a scheduled timetable, as the completion of the new store

was coming close.

68.     This same day, Mr. Dan Girard the LPM came to Plaintiff's store to follow up with the

audit he did at her store on June, 23, 2015. After Mr. Girard left, Mr. Graveley entered Plaintiff's

pharmacy and asked her how everything was going, and she replied that everything was going

well. At that point, Mr. Graveley never mentioned or asked Mrs. Ekemezie about anything

regarding quality assurance. He told Mrs. Ekemezie that she was doing well in some areas, like

her customer experience, which includes promising time for pick up, professionalism and

courtesy, patient acknowledgment and in stock. Mr. Graveley told Mrs. Ekemezie that the only

thing he wanted her to focus on was "prescriber follow up", which store #2004 scored low points

on.

69.     Although Mrs. Ekemezie was the PIC for store #2004, she was only one out of a team of

pharmacists that worked in that pharmacy on different days and scheduled times. Thus if the

pharmacy store as a whole entity scored low points, on "prescriber follow up", why should Mrs.

Ekemezie bear the overall burden of that low scoring, and why must she be singled out to focus

on "prescriber follow up", or to improve on that?

70.     Mr. Graveley then told Mrs. Ekemezie that another thing he would like her to do was not

to eat drink or snack next to where she was filling prescription. He instructed Plaintiff to take her

snack or food to the other side of the pharmacy. Mrs. Ekemezie said no problem, but explained

to Mr. Graveley that the reason she snacked next to her prescription filling workstation was

because she is diabetic and that when her blood sugar drops, it allows her to quickly grab her

snack, and also because she does not have a technician most of the time and or time to go for

break, she eats and snacks next to her workstation.

71.     Mr. Graveley then called Mrs. Ekemezie's general store manager Mr. Macro Villarca,

and conveyed to him, everything that he had told Plaintiff not to do, and what he wanted her to

do, while making his notes on his paper.

72.     After that, Mr. Graveley asked whether Mrs. Ekemezie had any questions, and she

answered no. Mr. Graveley did not give Mrs. Ekemezie any copy of the notes he made, or any

document to sign. He did not tell Plaintiff that he was giving her any kind of warning because

she would have called her union. He did not give her any warning, because apparently he knew

that the purpose of a follow-up, as he himself told Plaintiff during his visit was, to let her know

what she was doing well and what she needed to improve on – corrective and not disciplinary,

notwithstanding that so-called follow-up was a manufactured by CVS and its management. That

was it, and Mr. Graveley completed his August 8, 2015, visit and left.

73.     After Mrs. Ekemezie termination, she contacted her union. Mrs. Ekemezie and her union

representative Ms. Heather Thomas, went to the first meeting and only grievance meeting

between her union and CVS that Plaintiff attended. Present also at that meeting, are Mr. Jonathan

Belcher, CVS Employee Relations Manager, and another CVS female management employee.

74.     At that meeting, Mr. Graveley, said that the above visit on August 8, 2015, was a level three 3 counseling and warning to Plaintiff.

75.     Then, in the presence of everyone at that meeting, as noted in the preceding paragraph, and in response to Mr. Graveley's claim that the August 8, 2015 visit (which he himself told Plaintiff on the day was a follow-up visit), was now a level 3 counselling and warning, Mrs. Ekemezie's union representative Ms. Heather Thomas asked Mr. Graham a series of questions: (1) "Did you tell Blessing that your follow-up was a level 3 counseling and warning?"  Mr. Graveley answered "No", (2) "Did you give Blessing any copy of your counseling and warning?" Mr. Graham answered "No", and (3) "Did you give her any copy to sign?" Mr. Graveley answered "No." Ms. Thomas then said to Mr. Graveley: "So you slickly pretended to visit Blessing for follow up, wrote her a warning, gave her no copy of the warning or counseling, did not say anything to her about a level 3 counseling and warning to her, then but now you are claiming your August 8, 2015 visit was a level 3 counseling and warning?" Mr. Graham had no response and said nothing.

**September 2, 2015:**

76.     On September 2, 2015, Mrs. Ekemezie took a week off vacation, to celebrate her 28th wedding anniversary with her husband. Before she left for that vacation, Plaintiff made sure that she secured everything her store needed, ready for flu shots so that there will be no problems while she was away.

77.     While Mrs. Ekemezie was still on her celebratory vacation, she was contacted by staff pharmacist Angela Satorre who informed Plaintiff that Mr. Graveley came to Plaintiff's store and was asking about a flu shot tracker, which was not delivered and Plaintiff did not receive before she went on her wedding anniversary vacation. Mrs. Ekemezie texted Mrs. Satorre back, telling her to ask the general store Manager Marco Villarca whether he received any tracker, because she did not receive one before leaving for her vacation. Ms. Satorre replied back that Marco Villarca, said that he gave it to Plaintiff, which was a lie. Mrs. Satorre texted Plaintiff again, this time, telling her that Mr. Graveley was very upset and angry. Mr. Graveley instructed Ms. Satorre to call Plaintiff immediately and ask her where she kept the tracker, and that Plaintiff should bring it even though she was out of town. Plaintiff called Ms. Satorre back and told her again, that no flu shot tracker was delivered to her and that she never receive any before she left for her vacation, and that she should again, tell Mr. Graveley so.

**September 5 – 12, 2015:**

78.     Mrs. Ekemezie came back from her one week wedding anniversary celebration vacation and started work on September 7, 2015, which was a Monday and a Labor Day holiday. Sometime that day, Mrs. Ekemezie's technician Ms. Ridha Rahim, told Plaintiff that Mr. Graveley was at Plaintiff's store on Saturday, September 5, 2015, and in the office for more than 5 hours. Ms. Rahim then asked Mrs. Ekemezie whether she knew why he came in that day, and what he was doing in the office for those hours. Mrs. Ekemezie replied that she did not know, that she just came back from vacation. However, it became clear to Plaintiff that it was during that day and those hours that Mr. Graveley spent reviewing the video camera record searching

for dates and times he could see Mrs. Ekemezie completing a prescription without opening it just to look and close the bottle for a second time.

79.    Mr. Graveley's visit to Plaintiff's store on Saturday, September 5, 2015, while she was out of the office, and out town, on vacation, and the purpose for that visit, was to review the video camera in the office, to see how many prior days and times he can find, when Mrs. Ekemezie screened counted and verified prescription and accurately and safely and completely filled a prescription, without opening it again, for a second time, just to look and close the bottle again.

80.    Indeed, Mr. Graveley, while searching the video camera in Plaintiff's office, found few dates and times when Mrs. Ekemezie did not open the prescription, she has already completed, look at it again, and close it for the second time before putting it into the bag.

81.    However, and first, all of those prescriptions, filled by Mrs. Ekemezie on the dates Mr. Graveley used against Mrs. Ekemezie and reason for terminating her, were exact and accurately filled prescriptions, and none of the customers ever complained that they got the wrong prescription. Secondly, those same dates that Mr. Graveley claims the video shows Plaintiff did not look at the medication for a second time, before putting it into the bag, were also days Plaintiff worked alone by herself, without any technician or any other pharmacist, and the prescriptions, from start to finish, were filled by her alone.

82.     Mrs. Ekemezie believes that on those days that she alone completed a prescription from start to finish, merely opening a prescription she has filled herself, just to look at the bottle for the second time, before putting into the bag, implies that she was to quality check herself – she brings out the medicine, checks that it matches the image she has on her computer and the prescription, sees that the tablets are the right ones and that the count is accurate etc., she closes the prescription, completes the process and puts it into the bag for the customer to pick up.

83.     That she reasoned, that because she knows, and was certain that she had accurately and safely completed a particular prescription, by herself alone, she does not open the cap, peep into the bottle and close it again, is the violation and crime she committed and the reason Defendant CVS gave Mrs. Ekemezie, for terminating her after 25 years of service.

**September 12, 2015:**

84.     As Mrs. Ekemezie arrived at work that Saturday morning before 9: 00 am, and entered the pharmacy, she saw her coworker Genene, walk into the office. Then as Plaintiff grabbed and was putting on her work jacket, there was Mr. Graveley who followed her into the pharmacy. He asked Mrs. Ekemezie to follow him into the office. He then asked her coworker Genene to take care of the pharmacy.

85.     Unaware and confused, Plaintiff followed Mr. Graveley into the office. On entering the office, she saw another person - a lady, who was also a CVS management official already there. No union representative was present, because CVS did not notify the union that they were going to terminate Plaintiff that day, as the Collective Bargaining Agreement ("CBA") required them

to do, and because Plaintiff did not know that the call into the office was for her termination, she had no opportunity to ask for her union representative to be present as required by CVS and the Union's CBA. So, Defendant CVS, intentionally violated their contract with the union by not informing the union that it was going to terminate Plaintiff and by terminating her, without a union steward or representative present.

86.     Graham Graveley then told Plaintiff that he could have terminated her earlier but the day he came to do so, Plaintiff was on schedule buy not at work. Plaintiff explained that she was not at work on the day he stated though she was on schedule, because she swapped shift with her partner staff pharmacist, Angela Satorre, who she has a swapping arrangement with.

87.     Graham Graveley then told Plaintiff that the video indicated that she did not visually reopen the bottle of Rx she filled before putting it in the bag. Then he showed her the print out dates and handed her a copy and told Plaintiff that she has been terminated, and that she should take her stuff and leave the store immediately.

88.     Shocked, stunned, and humiliated, Mrs. Ekemezie cried and begged. As she knelt down sobbing, and begging, telling Graham Graveley that she needed her job to support her three kids in University, he said to Plaintiff: "you are wasting his time and if you do not leave immediately, I will call the police to arrest you and take out." That prompted Plaintiff to ask Graham Graveley whether she was a thief that he had to call the police to arrest her and take her out.

90.     Graham Graveley then escorted Plaintiff into the pharmacy, waited on her while she collected her belongs, and after she did so, as she walked out, Graham walked behind her until she got outside the store and said "good bye."

91.     And so went her job, and end of Plaintiff's twenty-five years (half of her entire 51 years at the time), of her life, that she had dedicated in service to CVS, and the only employer she worked for since graduation, in such an unconscionable, unfair and humiliation way.

92.     Plaintiff Blessing Ekemezie, a black Nigerian-American, 53 years old diabetic woman, started working for CVS Pharmacy Inc., (store #2004), sometime in May 1990, as a staff Pharmacist.

93.     Her starting salary as a staff Pharmacist, in 1990, was $44,096.00 (forty-four thousand and ninety-six dollars). Her salary as Pharmacist In-Charge ("PIC") of same store #2004 at termination, was $131,523.00 (one hundred and thirty-one thousand, five hundred and twenty-three dollars.

94.     Some years later, sometime around 1997 or 1998, she was promoted to Pharmacist-In-Charge. This position, meant that besides her Supervisor, and the overall Store Manager, she was the head and the senior pharmacist, of all the pharmacists that worked in her store, and was in charge of the overall dispensation of prescriptions and such related duties in her store.

95.     Mrs. Ekemezie has been an employee and have served Defendant CVS, for over 25 years.

96.     For 25 years, CVS never found any legitimate reason warranting the termination of Mrs. Ekemezie's employment, until Graham Graveley was brought in, in May of 2015, as Plaintiff's store #2004 was in the process of moving to a larger new 24 hours service facility, near her smaller old store that was to be closed.

97.     From day one, when Mr. Graveley was introduced to Mrs. Ekemezie, he immediately started looking to find fault with her, and within two months, before the opening of the new store, CVS through its agent Mr. Graveley, terminated Mrs. Ekemezie, without just cause, in breach of the Collective bargaining agreement between CVS and UFCW.

98.     In 2015, Defendant CVS, made region-wide management policy decision to terminate their veteran and over 40 years of age pharmacists (mostly women), who have put in many years of service – 10 years or more, who due to their long service tenure and experience, earn comparatively higher salaries than new and younger employees with less experience on the job.

99.     The sole purpose of this policy of terminating older pharmacists who have long tenure, and because of their tenure and experience, earn considerably more than new hires, and replacing them with newly graduated pharmacist, with no experience, is to cut costs - to serve the financial interests of CVS, at the an unacceptably high cost, and detriment of its dutiful and loyal workers like Mrs. Ekemezie, who have spent half of her lifetime serving CVS, just to be cast away so unfairly, without a genuine, legitimate reason, and with such reckless abandon.

100.    Instead of rewarding her for her loyalty for over 25 years, CVS robbed her, and by extension, her children in Universities and schools, and her entire family, the financial stability and security she dedicatedly work for, and expected, at a time she and her family needed it most – her senior years, and with medical health needs just like every other American employee and their family.

101.    Mr. Graveley apparently had been given the charge by CVS, to terminate Mrs. Ekemezie by any means and he did. From May 2015, Mr. Gravely pro-actively looked for a reason or reasons to fire Plaintiff. Eventually, by September 12, 2015, he was able to come up with the most flimsy, pretextual, and unwarranted reason to terminate Mrs. Ekemezie within 3 months – a hellish 3 months of fear, anxiety, intimidation, humiliation, etc., for Plaintiff, and an un-ceremonial end of her long career with CVS. Everyone except Plaintiff, moved to the new store # 2004 when it opened in November 2015 – two months after Mrs. Ekemezie was terminated.

102.    Immediately, Graham Graveley set out to find a reason by intentionally orchestrating series of actions against Mrs. Ekemezie, and from May, 22, 2015, when he was first introduced to Mrs. Ekemezie as her new Manager, her work-life experience changed for the worst as she became anxious, overly challenged, and in fear as a targeted employee almost daily, while at the same time, trying her very best to carry out her duties serving the public with their medical and prescription needs as the PIC of Defendant's pharmacy.

103.    Mr. Graveley abused his power over Mrs. Ekemezie as her superior, by leashing out various unwarranted adverse actions against her, in violation of CVS' own policy, and the CBA.

104.    In carrying out his charge to fire Mrs. Ekemezie, Mr. Graveley harassed, frightened, threatened, humiliated, and blamed her singularly for the apparent low performance of store #2004.

105.    Mr. Graveley's harassment and hostile treatment of Plaintiff caused her severe emotional distress. His constant and incessant harassment of Mrs. Ekemezie, created a hostile working environment for her to work in. And made it impossible for her to work in comfort, without fear, and constant worry and anxiety of what Mr. Graveley will say or do against her next.

106.    Defendant CVS, unlawfully, and in breach of the CBA contract, terminated Mrs. Ekemezie, on September 12, 2015.

107.     Defendant CVS unlawfully, and in breach of the CBA contract, replaced Mrs. Ekemezie, with a younger (under the age of 40), inexperienced pharmacist, Ms. Kehinde Adesina, who has worked for CVS for less than 4 years, and who was brought in from another store, to become the PIC of store #2004, despite the fact that Mrs. Ekemezie has seniority over her replacement under the CBA, had more experience on the job, has longer tenure (25 years), and store #2004 was Plaintiff's store.

108.    The younger, inexperienced pharmacists, Ms. Adesina, who CVS replaced Mrs. Ekemezie with at the new 24 hours store #2004, did not last long, in store #2004, because she

made too many errors.  The new store opened in November, 2016, and in July 2016, Ms. Adesina was moved to another store.

109.    Ms. Adesina, it was said, to have made about thirty (30) errors between January and July 2016, before she was removed by Defendant CVS, to another store. It was also said that under Ms. Adesina, as the PIC, the new store # 2004's performance fell. Unlike Mrs. Ekemezie, Ms. Adesina was not terminated, instead was removed to another store.

110.    Mrs. Ekemezie's termination was as a result of an intentional invidious discrimination, and witch hunt directed by CVS and orchestrated by Mr. Graham and others, because of her age and her race.

111.    Mrs. Ekemezie's termination, was a culmination of threats, verbal insults, intimidation, humiliation in front of others, lack of respect, harsh, unfair and unwarranted treatment of her without due consideration of her needs and welfare, as a diabetic.

112.    Mrs. Ekemezie's termination was a result of intentional, scotched-earth - get her fired by all means directive from CVS Pharmacy Inc., which was carried out by her white, younger, new supervisor, Graham Graveley, with impunity and without regard to Mrs. Blessings's rights or the dictates of the CBA contract CVS signed with the Union or federal and state laws.

113.    CVS and its agents, including but not limited to Graham Graveley, harassed Mrs. Ekemezie and created a hostile work environment for her, and caused her intentional emotional

distress.  And as a result of its breach of the CBA, federal and state laws, Defendant CVS is liable to Plaintiff Mrs. Ekemezie in damages.

114.    In July, Mrs. Ekemezie took a two (2) weeks family vacation, from 07/1215-07/26/15, and returned back to work on 07/27/15.  When she came back, her new, white and younger supervisor, Mr. Graveley, gave her no breathing space and harassed her on a continued daily basis. As it became too much for her, because it was making anxious, afraid and very uncomfortable for her to do her work under the gaze of Mr. Graveley, and his microscopic monitoring of her every move and action, Mrs. Ekemezie, contacted her union representative, Ms. Heather Thomas, and told her about all that was going on, including but not limited to the fact that Mr. Graveley was threatening, intimidating and harassing her, and forcing her to sign unwarranted and trumped up written counseling, and that she was afraid that she may lose her job. Mrs. Ekemezie asked Ms. Thomas her union representative, to help her and to advise her on what to do.

115.    Ms. Thomas told Mrs. Ekemezie that the union could not do anything at that time. Ms. Thomas however, advised Mrs. Ekemezie to start keeping record of events until Mr. Graveley calls Plaintiff again to meet him in the office. Mrs. Ekemezie did what her union told her, and so kept record of her daily experience at work, with Mr. Graveley.

116.    Union rep. Ms. Thomas, then told Mrs. Ekemezie that Ms. Kehinde Adesina, who is a PIC at another CVS store #1830, that was also about to be closed, and  a member of same union as Plaintiff, called her and was concerned about her job position, because she (Kehinde) did not

know whether she was going to be moved to the new store # 2004 (Mrs. Ekemezie's store and where she is the PIC), as a staff pharmacist, or to another store since her store # 1830 will be closing and she was not hearing anything from Graham Graveley.

117.    Ms. Thomas informed Plaintiff that she told Ms. Adesina that CVS can move her to any store they like including store # 2004 (Ms. Ekemezie's store), but not as a PIC, because Ms. Ekemezie  is already the PIC in that store, and that Blessing has seniority over Ms. Adesina. Ms. Thomas also informed Plaintiff that she told Ms. Adesina that as for Blessing Ekemezie, store # 2004 is her store and she will move there for sure.

118.    On September 12, 2015, the day Mrs. Blessing Ekemezie was terminated, no union representative was present, because CVS and its agents did not notify the union that they were going to terminate Plaintiff that day, as they were required to do under the CBA.  Also, because Plaintiff had no idea, and did not know that the reason Mr. Graveley called her into the office that day, was to terminate her, she had no opportunity to ask for her union representative to be present as required by the CBA. So, Defendant CVS, knowingly and intentionally violated their contract with the union by failing to inform the union that it was going to terminate Plaintiff and by terminating her, without a union steward or representative present because Plaintiff had no opportunity to alert her union.

119.    After Mrs. Ekemezie was terminated, the union filed a grievance. A first grievance meeting was scheduled. At that first and the only meeting that Plaintiff attended, in addition to

the union representative Ms. Thomas, present also was the following CVS management officials: Graham Graveley, Plaintiff's supervisor, Jonathan Belcher, CVS' Employee Relations Manager, and Kristin Borden another CVS representative.

120.    On August 5, 2015, Mr. Graveley came to Mrs. Ekemezie's pharmacy store, and told her that she was there for a July follow-up regarding a verbal correction quality assurance issue which he later put in writing after one moth, and asked Plaintiff to sign, but which she refused to sign. However, at that first grievance meeting, in the presence of all present, told Mrs. Ekemezie that the August 5, follow-up visit, was a "level 3 counseling and warning." At his whim and with fiat, Mr. Graveley unilaterally converted a so-called follow-up to a level 3 disciplinary action, because CVS has preordained Mrs. Ekemezie's termination by any means.

121.    In response to Mr. Graveley's assertion that the August 8, 2015 visit (which he himself told Plaintiff on that day was a follow-up visit), was now a level 3 counselling and warning, Mrs. Ekemezie's union representative Ms. Heather Thomas asked Mr. Graham and Mr. Belcher a series of questions:

122.    First she asked Mr. Jonathan Belcher, (1) "Has Blessing been disciplined before?" Mr. Belcher answered in the negative, "No." (2) "Has any employee been terminated before under the quality policy which you terminated Blessing? Mr. Belcher answered in the negative, "No, Blessing was the first employee."

123.    Then Ms. Thomas asked Mr. Graveley, (1) "Where is your level 2 and level 3 warnings that led to Blessings's termination?" Mr. Graveley answered, and said that "there is no level 2, it was the verbal one that I put on counseling form, and level 3 was the follow-up."

124.    At this point, Union representative Ms. Heather Thomas, asked Mr. Belcher, CVS' Employee Relations Manager, to step outside with her for a moment. So the trio, including Mrs. Ekemezie stepped outside of the meeting, where Ms. Thomas told Mr. Belcher: "CVS has messed up." Ms. Thomas also asked Mr. Belcher: "how can you (*CVS and management including Mr. Belcher himself*), terminate an employee at level 4, without a levels 2 and 3?" (*Emphasis added*). Clearly at this point, the Union knew that Mrs. Ekemezie's termination was without cause and in violation of the CBA.

125.    The trio came back into the meeting. Continuing her questions, Ms. Thomas asked Mr. Graveley: (1) "When you reached level, 3, as you said, did you tell Blessing that this is the last counseling and warning and it is level 3?" Graham Graveley answered in the negative, "No, I did not. (2) "Did you give Blessing a copy?" Graham Graveley answered in the negative, "No." (3) "Did you give her any anything to sign?" Mr. Graveley answered "No." (4) "Did you call and tell the Union that Blessing is getting a level 3?" Mr. Graveley answered "No." After answering no, to all of Ms. Thomas' questions, Ms. Thomas then said to Mr. Graveley:"So, you just slickly pretended to do a follow-up visit with Blessing on August 8, 2015 and wrote her a 3 level warning without the person you are giving it to, aware of it because you know what you are up to?"

126.    CVS certainly did not want Mrs. Blessing Ekemezie to be its PIC at the new 24 hours store. So, Mr. Graveley, was under pressure from CVS management to terminate Mrs. Ekemezzie before the new store #2004 opens, so that they can have the excuse that she ceased to be an employee before the move to the new store. Hence, Mr. Graveley, finding nothing to use as excuse for terminating Plaintiff, had to make one up. That this made up reasons were in violation of the CBA, Mrs. Ekemezie's rights, federal laws, and or CVS' own policy, was of no consequence to him and CVS, his principal.

127.    As things stood, it no doubt, was clear to Union representative, Ms. Heather Thomas, that Mrs. Ekemezie's termination was unfair, unjustified and in breach of the CBA. In fact, the Union, through its representative Ms. Thomas, made that clear in writing, in a letter addressed to Mr. Jonathan Belcher, that they were protesting the violation of Plaintiff's termination, "as a violation of Article 06 of our collective bargaining agreement." **See attached Exhibit B.**

128.    Despite having overwhelming evidence supporting going to Arbitration, the Union perfunctorily performed its duty of fair representation and allowed CVS and its management officials to get away with it, without much effort. Going to Arbitration would be expensive and time consuming the Union apparently concluded. So, the Union took the easy way out and decided not to take Mrs. Ekemezie's grievance to Arbitration, to serve its own interests, CVS' interest but not Mrs. Ekemezie's interests, and by extension, those of its other members working for Defendant CVS. This perfunctory performance and dereliction of its duty, amounts to a breach of the Union's duty of fair representation under section 301 of the LYMRA.

129.    Not only did UFCW and its local unit Local 400, act to protect theirs and CVS' interest' to the detriment of Plaintiff, by extension, the interests of other pharmacists who were members of the Union, were also detrimentally affected by the Union's refusal and or inability to send a clear message, that it was in violation both under federal law, the CBA, to terminate their older employees and replace them with younger ones, on account of their age, race, disability etc.

130.    Mrs. Ekemezie, was one of, and the first of what was to become a pattern by CVS – terminating its pharmacists who are older, who have been on the job for a minimum of 10 years and more (like Plaintiff – 25 years), and who earn relatively more than a young new hire (those replacing the older workers), without justification, but on the basis of concocted and trumped charges as in Plaintiff's case. Since Plaintiff's termination on September 12, 2015, CVS has terminated at least three female pharmacists from the same store #2004, who are also members of the Union.

131.    Although the circumstances of each employee's termination may be different, all those terminated by CVS from store #2004, have six different things in common. (1) They are all pharmacists, (2) They are all female, (3) They are all minorities of differ races and non is a Caucasian, (4) They are older workers (over the age of 40 and more), (5) They are veteran workers who have put in many years in service to CVS, and (6) The all have annual salaries of over $130,000.00 (one hundred and thirty thousand dollars) per year. For example, Mrs. Ekemezie is a black female pharmacist from Nigeria. She was 51 years at the time CVS terminated her, she has put in 25 years in the service of CVS, and her last salary at termination was above $130,000.00. Her partner, Mrs. Angela Satorre, is a Pilipino, female pharmacist from

the Philippines, she was over the age of 40 at the time of her termination, she has put in 17 years

in the service of CVS, and her last salary at termination according to her, was $139,000.00 (one

hundred and thirty-nine thousand dollars) per a year.

132.    Ms. Satorre, as a staff pharmacist earned more than Mrs. Ekemezie, $139,000.00 a year,

while Mrs. Ekemezie earned a little over $130,000.00 a year, even though she was the PIC of the

store #2004. CVS pays its PIC pharmacists, significantly more – up to $ 25,000.00 a year, more

than its staff pharmacists. The fact that Mrs. Ekemezie is under paid as a PIC, as compared with

a staff pharmacists, whose race is different from that of Plaintiff, when as a policy and practice,

CVS pays its PIC's more than staff pharmacists, Amounts to racial discrimination in violation of

Section 1981, 42 U.S.C. § 1981.

133.    The Union knew or should have known that the appropriate action was to insist that

Plaintiff be reinstated because CVS had no legitimate reason for terminating Plaintiff, as the

Union representative herself, in so many words, noted. In the alternative, the Union should have

negotiated a reasonable amount in damages, for back and front pay, given her 25 years, of

dedication and loyalty to CVS, and the fact that her termination was discriminatory. The Union's

handling of Mrs. Ekemezie's grievance, was perfunctory. Because the Union performed its

duties owed to Plaintiff under the CBA in a perfunctory manner, the Union is in breach of

section 301 of the Labor Management Relations Act ("LMRA").

134.    Given the detailed facts that was made known to the Union by Mrs. Ekemezie, as

highlighted herein, and in the face of all the evidence and facts that the Union through its

representative Ms. Thomas gleaned from CVS and its representatives, including but not limited

to facts that prompted Ms. Thomas to ask series of legitimate and pertinent questions, and the

answers that were given, no reasonable Union, would have decided not to go take Mrs.

Ekemezie's case to Arbitration or could have concluded that Arbitration would be futile, and that

the best recourse for Mrs. Ekemezie in the totality of the circumstances, was for her to settle for

$30, 000 dollars, in lieu of her waiving all and any other legal options open to her. But this in a

nutshell, what the Union negotiated and tried to persuade Plaintiff to accept as her best offer.

This was arbitrary, and the decision of the Union not to take Plaintiff's case to Arbitration was

not made in good faith given the totality of the circumstances of her termination, and the

detriment to Plaintiff. Because the Union's decision not to take Plaintiff's grievance to

Arbitration was without legitimate reasons, and as such amounts to an arbitrary decision, and one

carried out without good faith, the Union has breached their duty of fair representation under

section 301 of the LMRA.


135.     Under the CBA with CVS, the UFCW and its local unit Local 400, are the exclusive

representatives of its members. No member, of the Union, including Plaintiff, is privy to the

CBA, and as such must depend on the Union to represent them. The Union is required to serve

the interests of all its members without hostility or discrimination toward any, to exercise its

discretion with complete good faith and honesty, and to avoid arbitrary conduct.


136.     Although the Union has discretion in its representation of its members, it must exercise

that discretion with good faith, honesty, and not in a perfunctory or arbitrary manner. When

UFCW and its local unit Local 400 refused to take Mrs. Ekemezie's grievance to Arbitration,

they robbed Plaintiff her right to pursue her grievance to the superior end of the of the process, and in doing so, the Union breached their duty of fair representation owed to Mrs. Ekemezie specifically, and by extension, the rest of its members who work for CVS in general under the parties CBA, and pursuant to section 301 of the LMRA.

137.    Union representative Ms. Thomas then told CVS representatives at the meeting, that CVS violated the CBA by not notifying the union that one of their employee has been terminated. That it was Blessing who called and notified the Union. Ms. Thomas also told Mr. Belcher and others, that CVS was supposed to send the Union a copy of the termination letter, but failed to do so, and was also a violation of the CBA. Ms. Thomas the requested a copy of the termination letter, and other information from CVS representatives.

138.    Ms. Thomas finally asked CVS representatives, including Mr. Belcher and Mr. Graveley: "Did Blessing give wrong medication to the patient?" CVS representatives, answered: "No, she did not." "Then why did you rush to terminate her?" Graham Graveley answered: "Because he feels that it was very dangerous."

139.    By CVS' own admission, through its spokesperson Mr. Jonathan Belcher, to a question raised by Union representative Ms. Thomas, Blessing has not been disciplined before. And CVS, again, according to Mr. Belcher, has never terminated any employee before, under the quality policy they terminated Blessing Ekemezie. CVS' actions amounts to a breach of article 06 of the CBA. CVS' action is also discriminatory in violation of both the ADEA of 1967, and section 1981, 42 U.S.C. § 1981 on account of her race.

140.    The Union continued the grievance according to the CBA, and told CVS that because it

terminated Mrs. Ekemezie without just cause, CVS must reinstate her. However, CVS told the

Union that it will not reinstate Plaintiff.


141.    Later, at the end of the CBA grievance steps before the arbitration step ended, the Union

informed Mrs. Ekemezie that they have failed to get CVS to reinstate her. They also told her that

CVS, has offered to settle with the Union, her termination, and breach of the CBA, for $30,000

(thirty thousand dollars), and that they "strongly recommend that you accept this offer." **See**

**attached Exhibit C.**


142.    The Union wrote Mrs. Ekemezie, and asked her to consider the offer, and let them know

within 30 days whether or not she accepted the offer or not. The Union also attached a final

separation agreement for Mrs. Ekemezie to sign and return to them, should she accept the offer.

**See attached Exhibit D.**


143.    The Union also informed Mrs. Ekemezie in writing that they were not going to take her

grievance to Arbitration and gave reasons they felt justified their decision not to take her

grievance to its ultimate end of the process and arbitrate on her behalf, and told Plaintiff that they

strongly recommended that she accept the offer. The Union also informed her of her right to

appeal the Union's decision should she choose to do so. **See attached exhibit E.**

144.    Mrs. Ekemezie declined the offer CVS and the Union negotiated and proffered to her.

She informed her Union that she would want them to take her grievance to Arbitration, and

would like to know why the Union is refusing to go to Arbitration. The Union then gave Plaintiff

a recitation of claims against Plaintiff that CVS has told the Union as part of its bargaining tactic,

that it will produce as evidence at Arbitration against Mrs. Ekemezie.


145.    On March 23, 2016, Michael Boyle, Executive Assistant to the President of Union Local

400, Mr. Mark P. Federici, wrote Mrs. Ekemezie, informing her that "there is not sufficient basis

to warrant arbitration or pursuing your grievance further." **See attached Exhibit F.**

On March 25, 2016, Mrs. Ekemezie, appealed the Union Board's decision not to take her

grievance to arbitration, which she sent by certified mail receipt requested. **See attached Exhibit

G.**


146.    Plaintiff did not receive no acknowledgment or reply from the Union to her appeal dated

March 25, 2016 until May 31, 2016 – over two months later, when Plaintiff received an

acknowledgment letter from the Union, even though the USPS in fact did deliver it and on time.

**See attached Exhibit H.**


147.    On May21, 2016, Mrs. Ekemezie, wrote to the Union informing them that she was

resending her appeal to their decision not to take her grievance to Arbitration, and attached the

original appeal document she mailed them earlier dated March 25, 2016, the post office receipt

and tracking result sheet confirming that the USPS delivered it on March 28, 2016. **See attached

Exhibit I.** Plaintiff then called the union office to ask about her appeal just to be told that her

March 25, 2016 appeal, was still in the envelope hidden in the locker of the receptionists who received it, and unattended to.

148.    On July19, 2016, the Mr. Boyle, Executive Assistant to the Union's President, Mr. Federici, wrote Mrs. Ekemezie informing her that there was insufficient evidence to go to Arbitration, and as such, the Board will not be taking her case to Arbitration. **See attached Exhibit J.**

149.    Mrs. Ekemezie and her family were on a family vacation, when Mr. Boyle's letter arrived. On her return on July 30, 2016, and on receipt of it, Mrs. Ekemezie, on August 1, sent a note to Ms. Lavoris Mikki Harris, explaining that she has been unable to respond because she had been on vacation and had just returned. And on August 8, 2016, sent a full response, and asking Mr. Federici to respond to some questions she has regarding issues Mr. Boyle raised in his July 19, 2016 letter to her. **See attached Exhibits K.**

150.    Throughout their correspondence with Plaintiff, the Union maintained that there was insufficient evidence warranting Arbitration. The Union also, have continuously and dishonestly been claiming that it has fully and completely investigated the matter. When Plaintiff asked in her letter to the Union President, Mr. Federeci, of August 8, 2016, to expand, and tell her what investigation, and the people the Union claimed to have contacted, she got no answer other than a generalized answer that "the Union made a good faith determination that your case did not merit arbitration."

151.    The Union's claim that it made good faith determination that Plaintiff's case had no merit

to take it to Arbitration, is arbitrary, in bad faith and dishonest. The Union perfunctorily

performed their duty of fair representation in violation of section 301 of the LMRA.


152.    It is hard for the Union to legitimately claim that their determination was in good faith,

when they interviewed none of Mrs. Ekemezie's colleagues, who would have provided them

with "sufficient" evidence, since the Union concluded that everything Plaintiff herself told them

was not sufficient in their subjective view. As the facts, herein, mentions, there are ample

colleagues of Mrs. Ekemezie's, who witnessed the horrible and unwarranted treatment Mr.

Graveley gave Mrs. Ekemezie, and would have been willing to speak to the Union. Plaintiff,

have asked to know whether the Union contacted them during their investigation to ask questions

and they all said no, that the Union never contacted them. The Union as it turns out was more

willing to listen to what lies and made up facts, that CVS had to tell them than the true account

of facts, that Plaintiff had told them. Because the Unioni's actions and reasons for not taking

Plaintiff's case to Arbitration and claims are dishonest, the Union, arbitrarily, perfunctorily

performed its duty of fair representation owed to Plaintiff in bad faith, in violation of section 301

if the LMRA.


## COUNT I
### Proceeding Against Both Defendants Collectively
### Hybrid § 301 of the LMRA, 29 U.S.C. § 185
### <u>Breach of CBA and, The Duty of Fair Representation</u>


153.    Plaintiff repeats and re-alleges paragraphs 1 through 153 and incorporates them by

reference as though fully stated herein.

154.    CVS entered into a Collective Bargaining Agreement (CBA) described the rights and duties of covered employees.

155.    The CBA provides that the Union may pursue grievances to Arbitration, if members of the bargaining unit are terminated without cause.

156.    When CVS and its management officials transferred Kehinde Adesina from another store to replace Mrs. Ekemezie, as PIC in her own store, CVS violated the seniority provisions of the CBA.

157.    CVS, by its own express admission, terminated Plaintiff without just cause Defendant CVS through its Management officials and in particular, Mr. Grarely's actions, and omissions described herein above, breached the CBA contract with the Union, the sole representative of Plaintiff's rights under the CBA.

158.    The Union, violated its duty of fair representation to Plaintiff by acting in a way that is arbitrary, capricious, perfunctory, and in bad faith by failing to take Plaintiff's grievance to Arbitration, and for settling for and unreasonable offer given the evidence that shows that the offer was objectively unreasonable and inadequate.

159.    The Union has arbitrarily and capriciously refused to take Plaintiff's grievance to Arbitration in bad faith to Plaintiff's great detriment, because as the sole representative of its bargaining unit's members, Plaintiff depends on the good will of the Union to protect her interest

under the CBA, and the Union has failed to carry out its duties of fair dealing. The Union has failed in its duty of fair representation, because it abused its discretion when they deiced not to Arbitrate Plaintiff's grievance despite the overwhelming evidence that Defendant CVS terminated Plaintiff for no legitimate business reasons.

160.    The Union's failure to conduct necessary and roper investigation of Plaintiff's termination, and their refusal to diligently seek resolution through the grievance process to arbitration constitutes a breach of the Union's duty of fair representation.

161.    The Defendant Union, UFCW, and its Local 400, breached their duty of fair representation by their actions and omissions as described herein. The Union performed its duties perfunctorily.

162.    The Union's reason for not taking Plaintiff's grievance to Arbitration was dishonest. The Union's reasons and claims for not taking Plaintiff's grievance to Arbitration, in the face of the overwhelming evidence that it acknowledge during the grievance process, makes its decision arbitrary as no reasonable Union would have made such decisions given the totality of the circumstances surrounding the termination of Plaintiff.

163.    The actions and omissions of both CVS and the Union as described herein, are in violation of LMRA, 29 U.S.C. § 185.

<u>**COUNT II**</u>
<u>**Discrimination in Violation of 42 U.S.C. § 1981**</u>
<u>**Defendant CVS**</u>

164.    Plaintiff repeats and re-alleges paragraphs 1 through 164 and incorporates them by

reference as though fully stated herein.

165.    Section 1981, 42 U.S.C. § 1981 states:

    (a)  Statement of equal rights

    All persons within the jurisdiction of the United States shall have the same right

    in every State and Territory to make and enforce contracts, to sue, be parties, give

    evidence, and to the full and equal benefit of all laws and proceedings for the

    security of persons and property as is enjoyed by white citizens, and shall be

    subject to like punishment, pains, penalties, taxes, licenses, and exactions of every

    kind, and to no other.

    (b)  "Make and enforce contracts" defined

    For purposes of this section, the term "make and enforce contracts" includes the

    making, performance, modification, and termination of contracts, and the

    enjoyment of all benefits, privileges, terms, and conditions of the contractual

    relationship.

166.    The majority of Defendant CVS's pharmacists, are of minority races, and invariably, the

supervisors and managers that supervise and manage them are mostly Caucasian white males.

167.    The Practice of Defendant CVS, of singling out its employees for termination based on

their race is discriminatory and in violation of Section 1981.While Mr. Grarely, who is a white

Caucasian, who newly started working for CVS, is allowed to enjoy his work without any

harassment, intimidation, humiliation, coercion, and allowed to do his work in a non-hostile work atmosphere, while Mrs. Ekemezie is not allowed to, that is race discrimination.

168.    When Defendanat CVS singles Mrs. Ekemezie, who is an African woman, out by the hostile acts of their agent, Mr. Grarely, it is race discrimination.

169.    When Mrs. Ekemezie, who is an African woman, who suffers from diabetes is unconscionably intimidated and barred from snacking or eating from her own work station, despite her reasonable and excusable reason she gave Mr. Grarely, that she eats and snacks at her workstation because it is medically convenient and necessary for her, as it enables her to quickly grab something to eat when as a diabetic, her blood sugar can suddenly drop to a dangerous level and that having a quick snack at hand, helps, her, especially during those days when CVS has failed to provide her with a technician help, and she is so busy with customers that she hardly takes a break. Not only is this callous, and unconscionable, it is also discriminatory as her race is impacted, and a violation of Section 1981.

170.    Ms. Satorre, as a staff pharmacist earned more than Mrs. Ekemezie, $139,000.00 a year, while Mrs. Ekemezie earned a little over $130,000.00 a year, even though she was the PIC of the store #2004. CVS pays its PIC pharmacists, significantly more – up to $ 25,000.00 a year, more than its staff pharmacists. The fact that Mrs. Ekemezie is under paid as a PIC, as compared with a staff pharmacists, whose race is different from that of Plaintiff, when as a policy and practice, CVS pays its PIC's more than staff pharmacists, Amounts to racial discrimination in violation of Section 1981, 42 U.S.C. § 1981.

171.    When CVS representatives, including Mr. Belcher and Mr. Graveley admitted that Mrs.

Ekemezie never gave wrong medication to the patient/customer, and yet CVS terminated her,

that, that is discrimination as it prevented Mrs. Ekemezie from enjoying the full and equal

benefit of all laws and proceedings for the security of persons and property as is enjoyed by

white citizens, like Mr. Grarely and others who CVS never terminated or would not terminate if

they too, like Plaintiff never gave wrong medication to their customer, and as such a violation

under Section 1981.

177.    When by Defendant CVS' own admission, through its spokesperson Mr. Jonathan

Belcher,  Blessing Ekemezie has not been disciplined before, and that CVS has never terminated

any employee before, under the quality policy they terminated Blessing Ekemezie, that is

discrimination and a violation of section 1981, 42 U.S.C. § 1981 on account of her race.

173.    Because Defendant CVS discriminated against Mrs. Ekemezie an African woman, in

violation of Section 1981, CVS is liable to Plaintiff in damages.

## COUNT III
## Age Discrimination Act of 1967, 29 U.S. Code § 623,
## <u>Defendant CVS</u>

174.    Plaintiff repeats and re-alleges paragraphs 1 through 174 and incorporates them by

reference as though fully stated herein.

175.    Age Discrimination Act of 1967, 29 U.S. Code § 623, provides:

(a) Employer practices: It shall be unlawful for an employer—

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

(2)to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or

(3) to reduce the wage rate of any employee in order to comply with this chapter.

176.    At all times during the relevant period, Mrs. Ekemezie has been Defendant CVS' employee, and Defendant CVS has been Plaintiff's employer.

177.    Plaintiff Mrs. Ekemezie was 51 years old, when on September 12, 2015, CVS terminated her employment with them, and replaced her with a younger, pharmacist under the age of 40 years. This amounts to discrimination on account of age, and in violation of 29 U.S. Code § 623.

178.    When Mrs. Ekemezie who was 51 years old, has 25 years on the job experience, (and has seniority of the younger new employee under the CBA), was replaced by a younger, pharmacist under the age of 40 years, who has less experience (only 3 years) on the job a . That is discrimination on account of age, and in violation of 29 U.S. Code § 623.

179.    For 25 years, Plaintiff worked for Defendant CVS with dedication and loyalty. During the years, she acquired on the job experience that benefited her employer CVS. Also, during that long period of years working for CVS, Plaintiff's salary gradually rose. However, in an effort to save money for the interest of its bottom-line, CVS instituted a policy of targeting its older and

veteran workers who earn substantially more than new and younger hires, for termination. As a

result, employees like Plaintiff are targeted and terminated without justification. This is age

discrimination, and it is in violation of the ADEA of 1967.

180.    In 1990, when Mrs. Ekemezie started working for Defendant CVS, her starting salary as

a staff Pharmacist, was $44,096.00 (forty-four thousand and ninety-six dollars). Her salary as

Pharmacist In-Charge ("PIC") at termination, was $131,523.00 (one hundred and thirty-one

thousand, five hundred and twenty-three dollars. By terminating older workers like Plaintiff,

CVS policy is intended to save money. And by eliminating Plaintiff's job, CVS can use the same

salary that it pays Plaintiff to pay two or even three new younger, inexperienced pharmacists.

This is discrimination on account of age and in violation of the Age Discrimination Act of 167.

181.    Because CVS and its management intentional discriminated against Mrs. Ekemezie , in

her employment on account of her age, Defendant CVS is liable to Plaintiff in damages

## COUNT IV
## Harassment and Hostile Environmet
## Defendant CVS

182.    Plaintiff repeats and re-alleges paragraphs 1 through 182 and incorporates them by

reference as though fully stated herein.

183.    Plaintiff claims that CVS, through the acts of Mr. Graham Grarely, continuously, and

intentionally harassed, threatened, intimidated, humiliated, and coerced. That Mr. Grarely by his

constant harassment, intimidation and humiliation, Mr. Gravely orchestrated and created a

hostile working environment for her as he searched for reasons to terminate her employment as CVS and its management have given him charge to do.

184.    From May 22, 2015, the first day Mr. Grarely was introduced to Mrs. Ekemezie, to September 12, 2015, when Mrs. Ekemezie was terminated by Defendant CVS, Mr. Grarely, obsessively and unjustifiably harassed Mrs. Ekemezie, including but not limited to when she was on vacation, with her family, or on vacation, celebrating her 28th wedding anniversary with her husband.

185.    Mr. Grarely harassed Mrs. Ekemezie and created a hostile work environment for her, when he secretly monitored her on video camera while she was working, which made her very uncomfortable, anxious, and emotionally stressed her.

186.    When Mr. Grarely instructed Angela Satorre, to contact Mrs. Ekemezie who was on vacation with her husband celebrating their 28th wedding anniversary, and demanding that Mrs.

187.    Ekemezie who was out town deliver a flu shot kit, she never received and have informed Mr. Grarely that she never received it before she left for vacation, that was intentional harassment, and abuse of his power over Plaintiff, as her direct supervisor.

188.    Because CVS and its management intentional harassed Mrs. Ekemezie and created an unacceptable and unwarranted hostile environment for her to work in, Defendant CVS is liable to Plaintiff for compensatory damages

## COUNT V
## Intentional Infliction of Emotional Distress
## Defendant CVS

189.    Plaintiff repeats and re-alleges paragraphs 1 through 189 and incorporates them by

reference as though fully stated herein.

190.    The tort of intentional infliction of emotional distress has four elements: (1) the defendant

must act intentionally or recklessly; (2) the defendant's conduct must be extreme and outrageous;

and (3) the conduct must be the cause (4) of severe emotional distress.

191.    For four months beginning from May 2015, when CVS official Mrs. Grarely, a white

younger Caucasian male, was introduced to Mrs. Ekemezie as her supervisor, Mr. Grarely

intentionally and or recklessly, harassed, intimidated, humiliated, put Mrs. Ekemezie in great

fear and anxiety. Mr. Grarely continuously harassed Mrs. Ekemezie to the extent that a job that

she once looked forward to, because she enjoyed interactions with the patients/customers she

served, turned to a nightmare from the minute Mr. Grarely first met her. Mr. Grarely's actions,

caused Mrs. Ekemezie, serious emotional distress.

192.    When Mr. Grarely, unconscionably threatened and forced Mrs. Ekemezie, who is

diabetic, from snacking or eating at her work station, for no legitimate business reasons, he was

reckless, and showed no regard for any health dangers Plaintiff will be exposed to, if her blood

sugar were to drop, and she did not have her snack close to her, as Plaintiff explained. That

amounts to intentional infliction of emotional distress, and in violation of the laws of the District

of Columbia.

193.    When Mr. Grarely intentionally, secretly and recklessly monitored Mrs. Plaintiff while she was doing her work, something that no other employee have been subjected to, without regard to Plaintiff's rights, that is harassment and intimidation and humiliation, and in violation of DC laws.

194.    For the four months leading to Plaintiff's termination, Mr. Grarely subjected Plaintiff to unwarranted scrutiny that no other employer was have ever been subjected to. Through his actions, Mr. Grarely created a hostile work place that made it very difficult for Mrs. Ekemezie to do her job in comfort without anxiety or fear of what next Mr. Grarely will do or say to her.

195.    Mr. Grarely humiliated, shouted at Plaintiff, and wrongly accused her of keeping a flu package that she never received, and have made clear to Mr. Grarely she never received. Because Mr. Grarely and CVS wanted to terminate Plaintiff, Mr. Grarely concocted charges against her.

196.    Mr. Grarely' actions against Plaintiff are unconscionable, extreme and outrageous and must not be tolerated in American workplace.

197.    As a result of Mr. Grarely's actions, Plaintiff suffered severe intentional emotional distress for four months leading to her termination.

198.    As a result of the actions of CVS and its agents, Plaintiff suffered severe emotional distress and as a result, Defendant CVS is liable to Plaintiff in damages.

WHEREFORE, Plaintiff respectfully request the following relief from this Court:

A.      Declare that Defendant Union breached its duty of fair representation;

B.      Declare that Defendant CVS violated the CBA

C.      Declare that Defendant CVS violated the ADEA

D.      Declare that Defendants CVS violated Section 1981

E.      Declare that Defendants CVS violated Caused Plaintiff intentional infliction of emotional distress in violation of DC law.

F.      Award Plaintiff monetary damages, to include lost wages, fringe benefits,

G.      Past and future lost wages and benefits;

H.      Injunctive relief, including reinstatement to her former job, without breach in seniority since separation or front pay in lieu thereof;

I.      Compensatory and punitive damages;

J.      Consequential damages,

K.      Attorneys' fees;

L.      Expenses and costs

M.      All other and further relief as this Court deems necessary and proper.

## **DEMAND FOR JURY TRIAL**

TRIAL BY JURY IS DEMANDED ON ALL ISSUES TRIABLE BY A JURY.

Respectfully submitted this 28th day of February, 2017

*/s/ Stephen Christopher Swift*
Stephen Christopher Swift
D.C. Bar No. 428459
Swift & Swift, Attorneys at Law, P.L.L.C.
Suite 200
2121 Eisenhower Avenue
Alexandria, Virginia 22314-4688
Telephone: (703) 418 – 0000
Facsimile: (703) 535 – 8205
E-mail: steve@swift.law.pro

*Attorney for Plaintiff*
*Blessing Ekemezie*