UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BLESSING EKEMEZIE,

    *Plaintiff*,

v.

CVS RX SERVICES, INC.,

    *Defendant*.

Civil Action No. 17-367 (TJK)

## MEMORANDUM OPINION AND ORDER

Plaintiff Blessing Ekemezie commenced this action in February 2017 after she was terminated from her position as a pharmacist for CVS Pharmacy, Inc., bringing claims of discrimination under both federal and District of Columbia law. On October 15, 2018, Plaintiff filed a motion for leave to file a Second Amended Complaint. ECF No. 42. As relevant here, the proposed amended complaint would supplement the existing claims against Defendant CVS Rx Services, Inc., with additional facts, as well as add several new claims under federal law, the District of Columbia Human Rights Act (DCHRA), and both District of Columbia and Virginia common law. *See* ECF No. 42-2 ("2d Am. Compl."). Defendant opposed Plaintiff's motion in part, challenging various aspects of the proposed amended complaint as futile. *See* ECF No. 45 ("Opp'n").[1] The Court will address each of these challenges separately, and for the reasons explained below, Plaintiff's motion will be granted in part and denied in part.

---

[1] Defendant also filed a motion for leave to file a surreply, ECF No. 49, which Plaintiff opposed, ECF No. 50. "[S]urreplies are generally disfavored, and the determination as to whether to grant or deny leave is entrusted to the sound discretion of the district court." *Banner Health v. Sebelius*, 905 F. Supp. 2d 174, 187 (D.D.C. 2012) (citations omitted). "The standard for granting . . . leave to file a surreply is whether the party making the motion would be unable to contest matters presented to the court for the first time in the opposing party's reply." *United States v. Sum of $70,990,605*, 4 F. Supp. 3d 209, 215 (D.D.C. 2014) (omission in original)

I.   **Legal Standard**

Under Federal Rule of Civil Procedure 15(a)(2), when a plaintiff seeks leave to file an amended complaint, courts "should freely give leave when justice so requires."  Nonetheless, a court may deny such a request when, among other limited circumstances, it determines that the amendment would be "futil[e]."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  An amendment is deemed futile "if the proposed claim would not survive a motion to dismiss."  *Williams v. Lew*, 819 F.3d 466, 471 (D.C. Cir 2016) (quoting *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir 1996)).

As relevant here, a defendant may move to dismiss a claim under Federal Rule of Civil Procedure 12(b)(1) for "lack of subject-matter jurisdiction" and under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted."  In reviewing a motion under Rule 12(b)(1), a court need not accept unsupported factual inferences or legal conclusions, but it should "review the complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged."  *Cole v. Boeing Co.*, 845 F. Supp. 2d 277, 282–83 (D.D.C. 2012) (quoting *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004)).  Similarly, "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Xia v. Tillerson*, 865 F.3d

---

(quoting *Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 61 (D.D.C. 2001)).  "A surreply is not justified to correct 'an alleged mischaracterization.'"  *Id.* (quoting *Lewis*, 154 F. Supp. 2d at 61). Defendant claims that it seeks to file the proposed surreply "to address certain arguments Plaintiff raised in her Reply, which arguments had either not been raised in Plaintiff's original motion or which could not have been anticipated to be raised in Reply."  ECF No. 49 at 2.  But Defendant identifies no such arguments in its motion.  Instead, the filing is limited to challenging alleged mischaracterizations of Defendant's arguments by Plaintiff and pointing out deficiencies in Plaintiff's reply, neither of which are appropriate uses of a surreply.  Accordingly, Defendant's motion will be denied.

643, 649–50 (D.C. Cir. 2017) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 650 (quoting *Iqbal*, 556 U.S. at 678).

## II.     Analysis

### A.     National Origin Discrimination under 42 U.S.C. § 1981 (Counts I and II)[2]

Defendant objects to Plaintiff's inclusion of references to her national origin in Counts I and II, which bring discrimination and hostile-work-environment claims under 42 U.S.C. § 1981. *See* Opp'n at 3–4; 2d Am. Compl. ¶¶ 152–63 (Count I), 164–70 (Count II). Defendant argues that claims of discrimination based on national origin are not viable under § 1981. Opp'n at 3–4. Plaintiff clarified in her reply, however, that she makes no attempt to claim discrimination based on her national origin. *See* ECF No. 47 ("Reply") at 7–8. Rather, she explains that Counts I and II allege discrimination based on her race and *ethnicity* and that she only included her nation of origin—Nigeria—"to clarify where her African/Ibo race originates." *Id.* at 7. Given that express disclaimer, the Court will not strip her proposed amended complaint of any mention of her national origin, and it will grant her motion to amend as to Counts I and II.

### B.     Age Discrimination under Title VII (Count III)

Defendant next objects to Plaintiff's addition of Count III for disparate treatment and harassment on the basis of age under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, because that statute does not prohibit age discrimination. Plaintiff conceded in response that the inclusion of Count III was an error. *See* Reply at 8. Accordingly, Plaintiff's motion will be denied with respect to Count III.

---

[2] All references to "Counts" refer to those in Plaintiff's proposed Second Amended Complaint.

### C.     Compensatory Damages under ADEA (Counts IV and V)

Defendant also objects to Plaintiff's inclusion of references to pain and suffering and emotional distress in Counts IV and V, which set forth claims under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623 *et seq.* Though Defendant "does not oppose the *factual* amplification of these counts," it objects to her alleged "request for 'compensatory' damages for 'physical and emotional injuries, including emotional distress, and mental anguish, humiliation, embarrassment, loss of self-esteem, and anxiety,'" on the ground that ADEA only permits recovery of lost wages. *See* Opp'n at 5 (quoting 2d Am. Compl. ¶¶ 193, 203).

The Court agrees that the law is clear on this question. "Monetary remedies under the ADEA are limited to back wages . . . and liquidated damages." *Comm'r v. Schleier*, 515 U.S. 323, 336 (1995); *see also Younger v. D.C. Public Schools*, 320 F. Supp. 3d 158, 162 (D.D.C. 2018) ("Compensatory damages in cases alleging discrimination because of age can only include backpay and frontpay and cannot include pain and suffering."). But Plaintiff does not claim any particular *type* of damages in Count IV and Count V, as Defendant insists. She merely repeats the same requests for "damages," 2d Am. Compl. ¶ 192, and "compensatory damages," *id.* ¶ 201, that she included in her operative amended complaint. To be sure, she adds factual allegations that she has suffered a variety of intangible injuries—which Defendant concedes her right to include, Opp'n at 5—but she never specifically demands damages that are foreclosed under ADEA. Therefore, her amendments are not futile. Accordingly, Plaintiff's motion will be granted with respect to her amendments to Counts IV and V.

### D.     DCHRA (Counts VI and VII)

In her proposed amended complaint, Plaintiff also includes two new causes of action under the DCHRA, alleging disparate treatment (Count VI) and harassment and a hostile work

environment (Count VII) based on her age, disability, and race.  *See* 2d Am. Compl. ¶¶ 202–11 (Count VI), 212–19 (Count VII).  Defendant argues that the Court lacks subject-matter jurisdiction over these DCHRA claims because none of the purported discriminatory conduct or the effects of that conduct were alleged to have occurred in the District of Columbia, and thus that adding these new claims to the complaint would be futile in that they would not survive a motion to dismiss.  *See* Opp'n at 5–7.

The District of Columbia Court of Appeals has made clear that in order to bring a claim of discrimination under the DCHRA, the claimant must show that the "discriminatory decision [was] made, or its effects [were] felt, or both . . . occurred, in the District of Columbia." *Monteilh v. AFSCME, AFL–CIO*, 982 A.2d 301, 305 (D.C. 2009).  "It would not be enough . . . to show that the company is headquartered [t]here or has officers [t]here." *Id.* at 304–05; *see also Conn v. American Nat'l Red Cross*, 149 F. Supp. 3d 136, 150–51 (D.D.C. 2016) ("The DCHRA is not extraterritorial; its does not and cannot secure an end to discrimination in jurisdictions outside the District of Columbia." (quoting *Cole*, 845 F. Supp. 2d at 284)).

Plaintiff's proposed second amended complaint does not allege that any discriminatory conduct took place, or that any of the effects of the alleged discriminatory conduct were felt, in the District of Columbia.  Plaintiff is a resident of Virginia, 2d Am. Compl. ¶ 4, at all relevant times she worked at a CVS Pharmacy in Virginia, *id.*, and all of the discriminatory conduct she alleges in her proposed amended complaint took place in Virginia.  It appears that the only connections to the District of Columbia identified in the proposed amended complaint are the fact that Defendant has stores located in the District of Columbia, *id.* ¶ 5, and that Plaintiff filed her EEOC complaint with the District of Columbia office, *see id.* at 1; ECF No. 45-1

(Defendant's notice of charge of discrimination). As the District of Columbia Court of Appeals has made clear, those connections are not sufficient. See *Monteilh*, 982 A.2d at 304–05. Plaintiff does make references in her proposed amended complaint to a "region-wide management policy decision to terminate" Defendant's older pharmacists, 2d Am. Compl. ¶ 105, but she provides no evidence that a decision to terminate her or discriminate against her in any respect was made anywhere other than in Virginia, *see id.* ¶ 135 (noting, as evidence of a pattern of discrimination, that other individuals with similar characteristics were terminated from the same CVS location in Virginia). Accordingly, even under the liberal standard afforded plaintiffs under Rule 12(b)(1), the Court finds that it lacks jurisdiction under the DCHRA to adjudicate Plaintiff's claims of discrimination, that Counts VI and VII under the DCHRA would therefore not survive a motion to dismiss for lack of subject-matter jurisdiction, and that amending the complaint to add these claims would be futile. Therefore, Plaintiff's motion for leave to file an amended complaint will be denied as to the addition of these new counts.

### E. Intentional Infliction of Emotion Distress (Count VIII)

Plaintiff's operative amended complaint already contains a claim of intentional infliction of emotional distress (IIED), ECF No. 12 ¶¶ 194–203, but Plaintiff now clarifies in her proposed second amended complaint that she brings this claim under District of Columbia common law, *see* 2d Am. Compl. at 62. Defendant objects to this addition, arguing that Virginia law, not District of Columbia law, should govern Plaintiff's IIED claim under traditional choice of law principles. Opp'n at 9–10. And it further argues that, under Virginia common law, Plaintiff has failed to plead sufficient facts to prove the elements of an IIED claim. *Id.* at 11–15.

When faced with claims based on state substantive law, federal courts apply the choice-of-law rules of the forum state—here, the District of Columbia. *Oveissi v. Islamic Republic of*

*Iran*, 573 F.3d 835, 842 (D.C. Cir. 2009). "To determine which jurisdiction's substantive law governs a dispute, District of Columbia courts blend a 'governmental interests analysis' with a 'most significant relationship' test." *Id.* (quoting *Hercules & Co., Ltd. v. Shama Rest. Corp.*, 566 A.2d 31, 40–41 & n.18 (D.C. 1989)). Under the governmental interests analysis, a court must "evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be most advanced by having its law applied to the facts of the case under review." *Id.* (quoting *Hercules*, 566 A.2d at 41). "To determine which jurisdiction has the most significant relationship to a case, a court must consider . . . (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered." *Id.* (internal quotation marks omitted) (quoting Restatement (Second) of Conflict of Laws § 154(2) (1971)).

Given that framework, the Court concludes that Virginia substantive law must apply to Plaintiff's IIED claim. As previously noted, all of the alleged discriminatory conduct occurred in Virginia, Plaintiff is a resident of Virginia, and the parties' employment relationship was centered entirely in Virginia. The parties' only tie to the District of Columbia is the fact that Defendant operates multiple stores here, but those locations are not involved in this action, and that fact alone is insufficient to overcome the overwhelming connection this dispute has to Virginia. Furthermore, Virginia has a strong interest in protecting its citizens from tortious actions that occur there, as opposed to any interest the District of Columbia has in the extra-territorial application of its tort law. *See Perkins v. Marriott Int'l, Inc.*, 945 F. Supp. 282, 284 (D.D.C. 1996) ("Maryland's interest in preventing tortious acts against persons within its borders . . . is stronger than any interest the District of Columbia might have in extra-territorial

7

application of its law of torts."). Therefore, Plaintiff's motion for leave to amend this claim so as to assert it under District of Columbia common law must be denied.

Defendant also challenges the merits of Plaintiff's IIED claim under *Virginia* law and seeks to dismiss Count VIII entirely. But in doing so, Defendant attempts to litigate matters beyond the scope of the instant motion. Plaintiff's operative complaint already states a claim of IIED. ECF No. 12, ¶¶ 194–203. The only change to that claim Plaintiff makes in her proposed second amended complaint is the specification of District of Columbia common law. *See* ECF No. 42-3 at 74–76. Thus, even as the Court denies Plaintiff leave to make that change, the substance of the claim remains as pleaded in the operative complaint. The question of whether the operative complaint sufficiently pleads the elements of an IIED claim is not before the Court.

### F. Wrongful Discharge (Count IX)

Finally, Defendant objects to Plaintiff's proposed addition of Count IX, which states claims of wrongful discharge in violation of both District of Columbia and Virginia public policy. 2d Am. Compl. ¶¶ 230–36. Among other challenges, Defendant argues that, for similar reasons explained above, Virginia law rather than District of Columbia law should govern Plaintiff's wrongful discharge claims. Opp'n at 17–18. And Defendant argues that Plaintiff has failed to adequately plead a claim of wrongful discharge under Virginia law because the only statute Plaintiff cites in support of that claim was passed *after* Plaintiff was terminated. *Id.* at 21–22.

As to Defendant's first argument, the Court agrees, for substantially the same reasons stated above, that Virginia law, rather than District of Columbia law, governs Plaintiff's wrongful discharge claim. Plaintiff lives in Virginia, she worked and was terminated in Virginia, and the alleged protected conduct occurred in Virginia. *See Lurie v. Mid-Atlantic Permanente*

8

*Med. Grp., P.C.*, 787 F. Supp. 2d 54, 60 (D.D.C. 2011) (applying District of Columbia law to wrongful discharge claim because employment relationship was centered here and the District had a strong interest in protecting employees working here from wrongful termination).

Virginia law recognizes only three circumstances in which a plaintiff can state a claim of wrongful discharge from at-will employment in violation of public policy: "(1) [w]hen an employer violated a policy enabling the exercise of an employee's statutorily created right"; "(2) [w]hen the public policy violated by the employer was explicitly expressed in the statute and the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy"; and "(3) [w]hen the discharge was based on the employee's refusal to engage in a criminal act." *Francis v. Nat'l Accrediting Comm'n of Career Arts & Scis., Inc.*, 796 S.E.2d 188, 190–91 (Va. 2017) (citations and internal quotation marks omitted).

Given that Plaintiff's claim must satisfy one of these three narrow circumstances, the Court agrees that it would not survive a motion to dismiss under Rule 12(b)(6). Plaintiff relies on the second circumstance, but the only source of public policy Plaintiff identifies in her proposed amended complaint is a Virginia Board of Pharmacy regulation prohibiting pharmacies from "requir[ing] a pharmacist to work longer than 12 continuous hours in any work day" and instructing that "a pharmacist working longer than six continuous hours shall be allowed to take a 30-minute break." 18 Va. Admin. Code § 110-20-110(B) (2018). Plaintiff asserts that she was fired because she complained about her long hours and thereby implied that Defendant was violating that regulation. *See* 2d Am. Compl. ¶¶ 235–36. But Defendant points out that the regulation did not come into effect until February 8, 2017, well after Plaintiff was fired on September 12, 2015. *See* 33 Va. Reg. Regs. 1136 (Jan. 9, 2017). Accordingly, Plaintiff cannot rely on that provision to state a claim of wrongful discharge. Since Plaintiff has pointed to no

other source of Virginia public policy that would support such a claim, the addition of Count IX would be futile, and Plaintiff's request to add it to her complaint must be denied.

### III.     Conclusion and Order

For the foregoing reasons, it is hereby **ORDERED** that Plaintiff's motion for leave to file a second amended complaint, ECF No. 42, is **GRANTED IN PART** and **DENIED IN PART**. Specifically, leave to amend is **DENIED** with respect to Plaintiff's proposed amendment to Count VIII and the additions of Count III, Count VI, Count VII, and Count IX.  Leave to amend is **GRANTED** with respect to all of her other proposed changes.  In addition, Defendant's motion for leave to file a surreply, ECF No. 49, is **DENIED**.

It is further **ORDERED** that Plaintiff shall file her proposed second amended complaint, as modified consistent with this opinion, no later than February 1, 2019.  Defendant shall file a responsive pleading within 21 days from the filing of Plaintiff's second amended complaint.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: January 25, 2019