UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BLESSING EKEMEZIE,

    *Plaintiff*,

v.

CVS Rx SERVICES, INC.,

    *Defendant*.

Civil Action No. 17-367 (TJK)

**MEMORANDUM OPINION**

Blessing Ekemezie is an African-American woman of Ibo ethnicity who worked as a pharmacist for CVS Rx Services, Inc. CVS fired her in September 2015 after it determined that she repeatedly skipped a quality assurance check in its protocol for filling prescriptions. Ekemezie filed this action alleging that CVS's stated reason for firing her was a pretext for discrimination because of her race, ethnicity, and age, and that CVS's discrimination created a hostile work environment. CVS moved for summary judgment on all counts. It argues that it fired Ekemezie for a legitimate, nondiscriminatory reason and that the incidents Ekemezie identifies as creating a hostile work environment were neither truly hostile nor motivated by discrimination. After a close review of the record, the Court agrees with CVS and will grant it summary judgment on all counts.

**I.  Background**

    **A.  Factual Background**

Ekemezie worked for CVS Rx Services, Inc. ("CVS") for 25 years and spent about 15 years as the pharmacist in charge (PIC) of a CVS store in Alexandria, Virginia. Defendant's Statement of Facts, ECF No. 55-1 ("DSOMF") ¶ 2; ECF No. 55-3 at 6–59 ("Ekemezie Depo.")

15:5–17.[1]  As the PIC, Ekemezie was responsible for the store's pharmacy department and ensuring that the pharmacy followed CVS policies and procedures.  DSOMF ¶ 3.  One such policy is WeCare, CVS's multi-step process to ensure pharmacists and technicians fill prescriptions accurately.  *Id.* ¶ 8.

In the first two steps of WeCare, a pharmacist or technician enters the patient's prescription data into the pharmacy computer and loads the correct number of pills from the manufacturer stock bottle into a prescription vial.  *See* Ekemezie Depo. 21:8–22:21.  A pharmacist then performs the quality assurance (QA) step—which a technician cannot perform—where she verifies the prescription by opening the vial and comparing its pills' "size, color, and imprint" to an image of the prescribed medication on the pharmacy computer.  *See* ECF No. 55-6 at 18–19; Ekemezie Depo. 22:22–24:3.  WeCare includes other safety controls, but QA visual verification is the only chance for a pharmacist to check the dispensed medication against a

---

[1] Unless otherwise described, the facts set forth are undisputed.  The Court notes that, pursuant to Local Civil Rule 7(h), it treats many facts proffered by CVS as admitted because Ekemezie failed to properly respond to them.  *See Toomer v. Mattis*, 266 F. Supp. 3d 184, 190–91 (D.D.C. 2017).  Her statement of material facts violates Rule 7(h) and the Court's Minute Order of April 23, 2019—which warned the parties that it "strictly adheres to" that rule's dictates—by failing to respond "to each paragraph [in the movant's statement of facts] with a correspondingly numbered paragraph, indicating whether that paragraph is admitted or denied," and to "furnish precise citations to the portions of the record on which" she relies.  In fact, Ekemezie directly responds to only 20 of the 84 facts CVS asserted in its statement of facts.  *See* Plaintiff's Statement of Material Facts, ECF No. 57-1 ("PSOMF").  And where she does respond, she often does not provide a "concise statement of genuine issues" that clearly indicates which facts she admits or denies.  LCvR 7(h).  Finally, many of Ekemezie's purported "facts" include unresponsive commentary beyond what CVS asserts, *see, e.g.*, PSOMF ¶¶ 15–16, 20, 23; others are rife with legal conclusions, speculation, and mischaracterizations of the record, *see, e.g.*, *id.* ¶¶ 11–14 (including the allegation that CVS hired "out-of-town hatchet men" to undertake a "deliberate, contrived, flimsy, and orchestrated discriminatory scheme"); and several lack any evidentiary support at all, and merely cite her own second amended complaint, *see, e.g.*, *id.* ¶¶ 18, 20.

picture of the prescribed medication.  *See* ECF No. 55-3 at 89–102 ("Seedhom Depo.") 76:18–84:11.

According to CVS, it fired Ekemezie because she repeatedly skipped QA visual verification.  ECF No. 55-2 ("MSJ") at 1–2.  CVS first documented a visual verification violation in February 2015 when Ekemezie's supervisor, Jessica Wood, counseled her to correct the behavior.  *See* ECF No. 55-3 at 117.  In late June, Ekemezie's new supervisor, Graham Gravley, orally counselled her for violating the same policy.  *See id.* at 61–85 ("Gravley Depo.") 34:9–38:14.  In early July, Gravley saw Ekemezie skip the visual verification again, orally counseled her, and issued a written counseling around one month later.  *See id.* 52:10–56:2; ECF No. 55-3 at 125, 128–41, 143–45.[2]  Later that summer, Gravley reviewed pharmacy surveillance footage and identified seven more instances of Ekemezie skipping the visual verification step.  *See* Gravley Depo. 74:20–79:10; ECF No. 55-3 at 152–53.

There is no evidence in the record that creates a genuine issue of material fact about whether Ekemezie skipped the visual verification step that CVS accuses her of skipping.  During her deposition, she conceded that she violated the policy in the way that CVS claims she did, *see, e.g.*, Ekemezie Depo. 172:1–173:5, although she also testified that she had followed other safety

---

[2] Although Ekemezie argues that Gravley did not counsel her for skipping the visual verification in early July, and that this episode happened on June 23, PSOMF ¶ 28, this dispute is immaterial given Ekemezie's other documented visual verification violations and her deposition testimony that she skipped the visual verification when she worked alone.  *See* Ekemezie. Depo. 172:1–173:5.

3

procedures that are separate from QA visual verification, *see id.* 145:10–146:5, 172:14–173:1; ECF No. 57-28 ("Ekemezie Decl.") ¶ 7.[3]

### B.   Procedural Background

Ekemezie filed this action in February 2017.  ECF No. 1.  Her second amended complaint alleges that CVS used the visual verification policy as an excuse to hide the real reason it fired her—discrimination on the bases of race, ethnicity, and age.  ECF No. 52 ("2d Am. Compl.") ¶ 7.  In Counts I, II, and III of her second amended complaint, Ekemezie alleges disparate treatment and a hostile work environment on the bases of race, ethnicity, and age in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981,[4] and the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 623 *et seq.*[5]  2d Am. Compl. ¶¶ 152–82.  In Count IV, she alleges that Gravley's conduct amounted to intentional infliction of emotional distress.  *Id.* ¶¶ 183–92.

CVS moved for summary judgment on all counts.  With regard to Ekemezie's disparate treatment claim, it argues that it fired Ekemezie for a legitimate nondiscriminatory reason that

---

[3] In her statement of material facts and elsewhere, Ekemezie asserts in conclusory fashion that she followed *all* CVS's procedures, but she never cites evidence in the record for this proposition.  *See, e.g.*, PSOMF ¶ 12.

[4] Ekemezie states both her race and ethnicity as bases for CVS's alleged Section 1981 violations.  *See* 2d Am. Compl. ¶¶ 152–70.  She also mentions her national origin throughout her second amended complaint but does not base her claims on it.  *See id.*; ECF No. 47 at 7–8.

[5] Ekemezie also has Type 2 diabetes.  *See* 2d Am. Compl. ¶ 55.  Earlier, she sought to include a disability discrimination claim under the District of Columbia Human Rights Act (DCHRA) based on her diabetes.  *See* ECF No. 42-2 at 57–60.  The Court dismissed that claim for lack of subject matter jurisdiction.  *See* ECF No. 51 at 6.  Her second amended complaint and her opposition to CVS's motion for summary judgment have remnants of those disability-discrimination allegations, but they are conclusory and not rooted in any state or federal law.  *See* 2d Am. Compl. ¶¶ 7, 62, 73, 118, 121, 139.  Rather, they appear to concern Ekemezie's remaining hostile environment claim.  *See, e.g., id.* ¶ 158 (alleging that Gravley's rule on snacking in the pharmacy created a hostile work environment because snacking was medically necessary for Ekemezie); ECF No. 57-2 ("Opp'n") at 18 (arguing that CVS was unconcerned with Ekemezie's health because she had to work long shifts without help from a technician).

was not pretextual: her failure to visually verify prescriptions at the QA step, and that a reasonable jury could not find that it discriminated against Ekemezie.  *See* MSJ at 1–2.  To undermine CVS's proffered reason, Ekemezie argues that the visual verification policy added no value, she committed no prescribing errors, and CVS treated other pharmacists more favorably.  *See* ECF No. 57-2 ("Opp'n") at 15, 19, 25.

## II.   Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the burden of showing that there is no genuine issue of material fact, and "the non-movant must identify specific facts in the record to demonstrate the existence of a genuine issue."  *Montgomery v. Risen*, 875 F.3d 709, 713 (D.C. Cir. 2017).  The Court views the evidence "in the light most favorable to the non-movants" and draws "all reasonable inferences accordingly."  *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016).  But non-movant assertions that are "'so conclusory' as to put a jury in 'no position to assess' whether they are based in fact will not suffice."  *Montgomery*, 875 F.3d at 713 (quoting *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999)).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  Assertions are "insufficient to create issues of material fact" if they are "unsupported by citations to accurate record evidence."  *Hinson ex rel. N.H. v. Merritt Educ. Ctr.*, 579 F. Supp. 2d 89, 92 (D.D.C. 2008).

### III. Analysis

#### A. Disparate Treatment Discrimination

Ekemezie argues that when CVS fired her, she suffered disparate treatment under Section 1981 and the ADEA. *See* 2d Am. Compl. ¶¶ 152–63, 171–82 (Counts I and III). When a plaintiff claims disparate treatment under those statutes but does not produce direct evidence of discrimination, courts evaluate the claim using the familiar *McDonnell Douglas* framework applied in Title VII cases. *See Carney v. Am. Univ.*, 151 F.3d 1090, 1093 (D.C. Cir. 1998) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)); *Gold v. Gensler*, 840 F. Supp. 2d 58, 65–66 (D.D.C. 2012) (same). Under that framework, the burden of production starts with the plaintiff, who must make out a prima facie case of discrimination. *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014). The plaintiff must establish that "(1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination (that is, an inference that his employer took the action because of his membership in the protected class)." *Forkkio v. Powell*, 306 F.3d 1127, 1130 (D.C. Cir. 2002). The burden then shifts to the employer to give "some legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas,* 411 U.S. at 802–04. The plaintiff may then rebut the employer's justification by showing that it is pretextual. *Brown*, 774 F.3d at 1023.

When an employer has asserted a legitimate, nondiscriminatory reason, a court need not evaluate the plaintiff's prima facie case, and must only resolve whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee" based on her protected status. *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008). Showing a mixed motive is not enough—both Section 1981 and the ADEA

6

require a plaintiff to establish that discrimination was the "but-for" cause of her injury. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020); *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009).

To defeat CVS's proffered reason as pretext for race-, ethnicity-, or age-based discrimination, Ekemezie must do more than show it is unfair or unreasonable—she must show that it is not the real reason for her employer's actions. *See Than v. Radio Free Asia*, 496 F. Supp. 2d 38, 50–51 (D.D.C. 2007). She can meet that standard if she shows that CVS fabricated or lied about the underlying facts, or that CVS treated a similarly situated employee more favorably. *See Brathwaite v. Vance Fed. Sec. Servs., Inc.*, 613 F. Supp. 2d 38, 47 (D.D.C. 2009). The issue is ultimately not "the correctness or desirability of [the] reasons offered . . . [but] whether the employer honestly believes" them. *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996), *as amended on denial of reh'g* (July 15, 1996).

CVS gave a legitimate and nondiscriminatory reason for firing Ekemezie: deliberately ignoring the visual verification policy. Ekemezie knew that following WeCare was part of her job responsibility as a pharmacist. *See* Ekemezie Depo. 81:4–16, 86:8–87:17; ECF No. 55-6 at 11–20. CVS counseled Ekemezie multiple times for violating the policy. *See* Ekemezie Depo. 112:14–113:21, 118:1–120:2, 143:10–144:9, 165:11–16, 173:17–184:20. When Ekemezie continued violating the policy after those counselings, CVS fired her and explained her termination stemmed from those violations. *See* Gravley Depo. 74:13–85:9, 90:13–16, 116:7–117:8, 130:22–133:2. CVS has thus satisfied its burden of production by offering admissible evidence that it fired Ekemezie for a nondiscriminatory and facially credible reason, and that it gave her a "clear and reasonably specific explanation." *Figueroa v. Pompeo*, 923 F.3d 1078, 1087–88 (D.C. Cir. 2019).

Because CVS satisfied its burden of production on a legitimate, nondiscriminatory reason, the burden shifts to Ekemezie to show that the reason was pretextual. *See Brown*, 774 F.3d at 1023. Ekemezie faces an especially high bar to showing pretext in either disparate treatment claim because CVS replaced her with Genene Tefera, an African-American pharmacist who was older than Ekemezie. *See Murray v. Gilmore*, 406 F.3d 708, 715 (D.C. Cir. 2005) ("[A] replacement within the same protected class cuts strongly against any inference of discrimination."); Gravley Depo. 88:4–15.

Ekemezie has failed to show a genuine issue of material fact about whether CVS honestly believed that it fired her for failing to verify prescriptions according to its established protocol. First, she argues that visual verification is useless when a pharmacist works alone and must check a prescription that she herself just filled; according to Ekemezie, she ensured safety by completing other checks in the prescription process and did not make prescription errors. *See, e.g.*, Plaintiff's Statement of Facts, ECF No. 57-1 ("PSOMF") ¶¶ 16, 20. But she agrees that the visual verification policy governed her employment and there was no exception for pharmacists working alone. *See id.* ¶¶ 17, 20. Accordingly, CVS—which feared that violations of that policy endangered its patients, *see* Gravley Depo. 31:1–14, and treated violations of safety procedures seriously, *see* Seedhom Depo. 84:12–90:3—was entitled to enforce the policy without either Ekemezie or the Court acting as a "super-personnel department that reexamines an entity's business decisions." *Barbour v. Browner*, 181 F.3d 1342, 1346 (D.C. Cir. 1999). In other words, Ekemezie's gripe with the policy does not show pretext in CVS's reliance on it.

Second, Ekemezie argues that CVS applied a discriminatory double standard to her as compared to other employees. For example, she alleges that Gravley mis-filled a prescription and CVS did not discipline him. *See* 2d Am. Compl. ¶¶ 149–50; Ekemezie Decl. ¶ 11. To show

8

disparate treatment using comparator evidence, a plaintiff must show that her employment situation is "nearly identical" to her comparator's in "all of the relevant aspects," and that the employer charged both employees with offenses of "comparable seriousness." *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999).  Offenses need not be exactly the same to be "comparabl[y] serious[]," *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1118 (D.C. Cir. 2016), but they are not comparable when the plaintiff's conduct and the purported comparator's are not "categorically similar," *see Evans v. District of Columbia*, 219 F. Supp. 3d 99, 109–10 (D.D.C. 2016) (reasoning that the plaintiff and proffered comparators—even though they were all police officers who wrongfully accepted outside employment—were not similarly situated because only the plaintiff lied about his conduct).  Here, Gravley and Ekemezie are not comparable because they did not commit "categorically similar" infractions.  *Id.*  While Gravley accidentally filled a single prescription with the wrong medication—which was later corrected after visual verification (as CVS designed WeCare to work)—Ekemezie repeatedly ignored that QA step despite multiple counselings, and CVS determined that she did so intentionally.  *See* PSOMF ¶ 23; DSOMF ¶ 41; Gravley Depo. 116:16–22.  Because CVS's disciplinary practices distinguish between typical human error and "knowingly bypassing a step that was there to help [CVS] not hurt anybody," Seedhom Depo. 85:18–19, CVS's handling of Gravley's error does not support an inference that Ekemezie was the victim of unlawful discrimination.

And CVS, for its part, offers comparators of its own that significantly undermine the notion that it singled Ekemezie out for discrimination.  Like Gravley counseled Ekemezie, he counseled Augustina Nyasunu for skipping the visual verification step, and CVS fired her after

she did not correct the behavior.[6]  *See* Gravley Depo. 94:15–97:20.  Gravley also counseled Laura Perkins, who Gravley identified as African-American and in her mid-50s, and Kimkanh Vu, who Gravley identified as Asian-American and in her mid-50s, for skipping the visual verification.  Gravley Depo. 91:18–93:12; 98:13–100:7.  But CVS did not fire them because they corrected their behavior.  *Id.* 93:13–94:4; 99:21–100:1.  To be sure, CVS gave Vu more time between her counseling and her scheduled follow-up review than it gave Ekemezie, but that difference was immaterial given the equal time they had to complete corrective training and CVS's other strong comparator evidence.  *See* ECF No. 55-3 at 147–48, 172–73.  The record thus supports CVS's contention that it disciplined Ekemezie because she would not conform her behavior to its policy—not based on her race, ethnicity, or age.

Third, Ekemezie's remaining arguments are completely devoid of support in the record. *See, e.g.*, Opp'n at 11 (alleging that CVS had never fired a pharmacist for violating the visual verification policy before Ekemezie); *id.* at 26 (alleging that CVS deviated from a requirement to give an employee three warnings before firing her); *id.* at 40 (alleging that CVS has a history of discriminatorily firing employees based on race and age).

CVS is therefore entitled to summary judgment on Ekemezie's disparate treatment claims—Count I and Count III in relevant part.

**B.     Hostile Work Environment**

Ekemezie also alleges that CVS created a hostile work environment on account of her race, ethnicity, and age.  *See* 2d Am. Compl. ¶¶ 164–70, 179 (Counts II and III).  Hostile work environment claims under Section 1981 and the ADEA follow the same basic standard as those

---

[6] The record does not definitively reflect Nyasunu's age, race, or ethnicity.  Ekemezie represents that Nyasunu is a 59-year-old employee from Ghana who is not Caucasian.  *See* 2d Am. Compl. ¶¶ 8, 120.

brought pursuant to Title VII.  *See Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576 (D.C. Cir. 2013); *Lurensky v. Wellinghoff*, 167 F. Supp. 3d 1, 21 (D.D.C. 2016).  The standard requires discriminatory animus and severity—Ekemezie must show that (1) her workplace was "permeated with 'discriminatory intimidation, ridicule, and insult'" that was (2) "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)).  Conduct only meets this standard if "a reasonable person would find [it] hostile or abusive"—neither "isolated incidents (unless extremely serious)" nor "ordinary tribulations of the workplace" amount to a hostile work environment.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998).  "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance."  *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008).  Courts should not consider actions that "'lack a linkage' to discrimination" because "evidence that bears no connection to the plaintiff's protected status cannot support a hostile work environment claim."  *Mason v. Geithner*, 811 F. Supp. 2d 128, 179 (D.D.C. 2011) (quoting *Bryant v. Brownlee*, 265 F. Supp. 2d 52, 63 (D.D.C. 2003)), *aff'd,* 492 F. App'x 122 (D.C. Cir. 2012).

Ekemezie bases her hostile work environment claims on Gravley's conduct.  According to Ekemezie, Gravley unfairly blamed her for the pharmacy's performance and scrutinized her by visiting the store often and reviewing pharmacy surveillance footage of her.  *See* 2d Am. Compl. ¶¶ 85, 166–67; Ekemezie Depo. 255:4–257:11.  She also alleges that Gravley wrongly stopped her from changing the computer-generated work schedule, kept her from snacking in the

pharmacy despite her diabetes, and yelled at her twice.[7]  *See* 2d Am. Compl. ¶¶ 42, 48, 85, 166–68, 189; Ekemezie Decl. ¶ 14.

Gravley's conduct, taken as a whole, meets neither requirement for a hostile work environment claim.  First, Ekemezie has not shown that Gravley's conduct resulted from discriminatory animus.  Indeed, Ekemezie concedes that no CVS employee—including Gravley—ever directed discriminatory remarks at her.  Ekemezie Depo. 225:1–227:5.  Rather, she tries to show discriminatory animus by arguing that Gravley singled her out from other employees.  Again, Ekemezie fails to support this claim with record evidence.  For example, Ekemezie asserts that CVS never monitored pharmacists like it monitored her, but she cites only her second amended complaint in support.  *See* Opp'n at 35.  In truth, the record shows that Gravley acted as a typical supervisor, giving reasonable direction that did not implicate Ekemezie's race, ethnicity, or age.  *See, e.g.*, Ekemezie Depo. 189:16–192:22 (answering that Gravley told Ekemezie she could not keep her snacks at the pharmacy workbench but could eat them a few feet away at a different counter in the pharmacy).

Second, Ekemezie does not marshal evidence showing that CVS's conduct was "severe or pervasive."  *Harris*, 510 U.S. at 21.  At worst, she cites "isolated incidents" and "ordinary tribulations of the workplace."  *Faragher*, 524 U.S. at 787–88.  For example, Ekemezie's allegations that Gravley yelled at her two times—even accepting them as true—are not so severe that a reasonable jury could find a hostile work environment.  *See Akosile v. Armed Forces Ret. Home*, 938 F. Supp. 2d 76, 87 (D.D.C. 2013) ("Negative interactions with supervisors, even

---

[7] Whether Ekemezie was even the subject of Gravley's alleged shouting is unclear for at least one alleged instance.  *See* 2d Am. Compl. ¶¶ 42, 189.  But that point is immaterial because even if she were the subject in both alleged instances, it would not meet the hostile work environment standard.  *See Akosile v. Armed Forces Ret. Home*, 938 F. Supp. 2d 76, 87 (D.D.C. 2013).

when a supervisor yells and uses profanity, generally do not meet [the hostile work environment] standard."); 2d Am. Compl. ¶¶ 42, 189; Ekemezie Decl. ¶ 14.  Similarly, Ekemezie alleges that Gravley harassed her by "constantly" visiting her store.  Ekemezie Depo. 254:17–19.  But by her own count, he visited five times over four months, *id.* 255:4–257:11, a reasonable amount given that Gravley's core responsibility was managing his district's stores and CVS's standard practice was for managers to spend at least three days each week visiting stores, *see* Gravley Depo. 12:13–13:19.  Ekemezie may believe that she suffered "harsh, unfair and unwarranted treatment" by Gravley and CVS, 2d Am. Compl. ¶ 122, but "simply having a rude, harsh, or unfair boss is not enough for a hostile work environment claim," *Dudley v. Wash. Metro. Area Transit Auth.*, 924 F. Supp. 2d 141, 171 (D.D.C. 2013).

CVS is thus entitled to summary judgment on Ekemezie's hostile work environment claims—Count II and the rest of Count III.

## C. Intentional Infliction of Emotional Distress

Ekemezie's last claim is intentional infliction of emotional distress, which she bases on the same allegations in her hostile work environment claim.  *See* 2d Am. Compl. ¶¶ 183–92.  As the Court previously held, Virginia law governs Ekemezie's IIED claim because all the alleged conduct happened there.  *See* ECF No. 51 at 7.  Under Virginia law, a plaintiff bringing an IIED claim must prove four elements: (1) the wrongdoer acted intentionally or recklessly; (2) the wrongdoer's conduct was "outrageous and intolerable"; (3) there was a causal connection between the conduct and the plaintiff's emotional distress; and (4) "the emotional distress was severe."  *Harris v. Kreutzer*, 624 S.E.2d 24, 33 (Va. 2006).  "Liability arises only when the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it."  *Russo v. White*, 400 S.E.2d 160, 163 (Va. 1991).  It "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other

trivialities." *Gaiters v. Lynn*, 831 F.2d 51, 53 (4th Cir. 1987) (quoting Restatement (Second) of Torts § 46 comment d).  Because IIED is "not favored in the law," a plaintiff must prove it by "clear and convincing" evidence.  *Russo*, 400 S.E.2d at 162 (internal quotation marks omitted).

Gravley's conduct cannot support Ekemezie's IIED claim any more than it can support her hostile work environment claims.  No reasonable jury could find that Gravley's behavior was "outrageous and intolerable."  *See Harris*, 624 S.E.2d at 33.  The most severe episodes that Ekemezie identifies were two purported instances of Gravley shouting, only one of which was clearly directed at her.  *See* 2d Am. Compl. ¶¶ 42, 189; Ekemezie Decl. ¶ 14.  But under the relevant legal standard, workplace disputes—even those that involve shouting—"do not rise to the level of outrageousness required" for an IIED claim.  *Simmons v. Norfolk & W. Ry. Co.*, 734 F. Supp. 230, 232 (W.D. Va. 1990) (quoting Restatement (Second) of Torts § 46 comment d).

CVS is thus entitled to summary judgment on Ekemezie's IIED claim—Count IV.

## IV.     Conclusion

For all of the above reasons, the Court will grant CVS's Motion for Summary Judgment, ECF No. 55.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: July 21, 2020